**THE LAW OFFICE OF C. DEAN HOMAYOUNI, ESQ.**
C. DEAN HOMAYOUNI, ESQ. (225282)
7764 Painted Sunset Drive
Las Vegas, NV   89149
Telephone: (702) 368-0500
Facsimile: (702) 433-0700
Email: deanhomayouni@gmail.com

Attorney for Arcanum Equity Fund, LLC and  Vestium Management Group, LLC

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CASE NO.: CV 09-000665 LKK-DAD |
| Plaintiff, | **OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM** |
| v. | Date:        December 7, 2009 |
| ANTHONY VASSALLO, et. al, | Time:        10:00 a.m. |
| Defendants. | Location:   Courtroom 4, 15th Floor |
| | Judge        Hon. Lawrence K. Karlton |

Arcanum Equity Fund, LLC and Vestium Management Group, LLC, by and through their attorney, C. DEAN HOMAYOUNI, ESQ., file this Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium. This Opposition is supported by the pleadings and papers on file in this matter, the attached Memorandum of Points and Authorities and any other argument entertained by this Court.

### MEMORANDUM OF POINTS AND AUTHORITIES

Vestium Management Group, LLC ("Vestium") and Arcanum Equity Fund, LLC ("Arcanum") (Vestium and Arcanum are collectively referred to as "The Funds") completely dispute that they owe EIMT and its related groups, Kenitzer and the Stewardship Group Foundation, the amounts claimed by the Receiver.  While the Funds agree that the Receiver has stated correctly the total amount of

The Law Office of
**C. DEAN HOMAYOUNI**
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

1   monies that were invested with the Funds, Vestium has already paid EIMT in full and Arcanum has

2   paid everything except for $265,568,22.

**A.**     **Transactions as related to the Vestium.**

     The Funds agree with the following statements contained in the Receiver's Memorandum of

Points and Authorities:

    1.    Vestium received $4,000,000 in funds from EIMT;

    2.    Vestium remitted  estimated profits of $81,391.28 to EIMT on December 3, 2008;

    3.    Vestium remitted $2,000,000 to EIMT on December 22, 2008;

    4.    Vestium remitted $1,200,000 to EIMT on January 12, 2009; and

    5.    Vestium has remitted total cash of $3,281,391.28 to EIMT.

     While it may appear from these simple facts that Vestium owes EIMT $718,068.80, there are

additional facts that the Receiver has failed to provide to the court.  These facts are as follows:

    1.    In November and December 2008, Anthony Vassallo and Ken Kenitzer began demanding that their $4,000,000 investment in Vestium be payed immediately.  See page 1, paragraph 3 of Affidavit of Robert Buckhannon in Support of Opposition to Order Disgorgement of Funds from Vestium/Arcanum attached hereto as **Exhibit A**.

    2.    Mr. Robert Buckhannon, in a series of telephone conferences and meetings with Vassallo, told Vassallo that numerous Vestium investments had significantly declined in value during the fourth quarter of 2008 as a result of the worst financial Wall Street meltdown since the Great Depression.  See page 1, paragraph 4 of **Exhibit A**.

    3.    Buckhannon told Vassallo numerous times that Vestium was not willing to cash out investments that had unexpectedly declined in value and was not required to do so in accordance with the terms of the Vestium Private Placement Memorandum.  See page 1, paragraph 5 of **Exhibit A**.

    4.    Vasallo agreed that any losses that were incurred as a result of Vestium's immediate redemption of investments needed to satisfy EIMT's payment demands would be

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM
CASE NO. CV 09-000665 LKK-DAD

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone: (702) 658-0969, Facsimile (702) 966-3707

absorbed and allocated to the EIMT account balance.  See page 2, paragraph 6 of **Exhibit A**.

5.   On Thursday, December 18, 2008, Vestium sold $3,969,045.89 in WU bonds for $3,054,612.97, incurring a loss of $914,432.92.   See page 2, paragraph 7 of **Exhibit A**. See also the expert report of Steve Martin, CPA attached hereto as **Exhibit B**. The Expert Disclosure and Mr. Martin's Resume and Case History is attached hereto as **Exhibit C**.

6.   Vestium would not have sold the bonds but for EIMT demand for immediate payment. See page 2, paragraph 12 of **Exhibit A**.

7.   $2 million was wired to EIMT on Monday, December 22, 2009.  See Trustee's statement of facts.

8.   Vassallo, as the representative of EIMT and Veritas, executed a Release with Vestium agreeing to the settle the outstanding Veritas and EIMT accounts for $1.2 million attached hereto as **Exhibit D** (the "Release Agreement") .  See page 2, paragraph 10 of **Exhibit A**.

9.   Two days after executing the Release Agreement, Vestium wired the remaining $1.2 million to EIMT on January 12, 2009.  See the Receiver's statement of facts.

Based on the entire set of facts, Vestium's obligation has been paid in full.  The reason EIMT received less than the full amount of $4,000,000 is because EIMT demanded to be paid immediately. In order to make this immediate payment of a significant amount of money, Vestium was required to sell investments at a loss.  EIMT agreed to absorb the $914,432.92 losses that Vestium incurred in order to obtain the cash to make this immediate payment.  Vestium would not have incurred this loss but for EIMT's payment demands.  Most significantly, the parties signed a written Release Agreement stating that upon payment of the $1,200,000, that the EIMT was settled in full.

The Vestium Private Placement Memorandum ("The PPM") is quite clear that Vestium and its managers are not required to blindly redeem account balances.  A true and correct copy of The

PPM is attached hereto as **Exhibit E**. In addition, The PPM listed numerous risk factors that could result in redemptions being delayed or not made at all.  Given the numerous and significant risk factors that were spelled out in The PPM, the Receiver has no right to demand payment in full when the Funds incurred substantial losses due to market forces beyond the Funds control to satisfy EIMT's demand for immediate payment.  The specific provisions and risk factors contained in The PPM and applicable to this issue are outlined and stated as follows:

1.  The face of The PPM:

**"THE SECURITIES OFFERED HEREBY ARE HIGHLY SPECULATIVE, AND AN INVESTMENT IN THE SECURITIES INVOLVES A HIGH DEGREE OF RISK. INVESTORS SHOULD BE ABLE TO WITHSTAND THE TOTAL LOSS OF THEIR ENTIRE INVESTMENT IN THE SECURITIES THAT ARE THE SUBJECT OF THIS MEMORANDUM. THE FUND IS OFFERING THE SECURITIES SOLELY TO INVESTORS THAT SATISFY CERTAIN SUITABILITY STANDARDS, INCLUDING THE ABILITY TO AFFORD A COMPLETE LOSS OF THEIR INVESTMENT. (SEE "RISK FACTORS")."**

2.  Page 1 of The PPM:

AN INVESTMENT IN THE FUND IS HIGHLY  SPECULATIVE AND INVOLVES A HIGH  DEGREE OF RISK. INVESTORS SHOULD HAVE THE FINANCIAL ABILITY AND HAVE THE WILLINGNESS TO ACCEPT SUCH RISKS AS WELL AS THE LACK OF LIQUIDITY THAT IS CHARACTERISTIC OF THE INVESTMENTS DESCRIBED HEREIN. ONLY PERSONS WHO CAN AFFORD TO LOSE THE ENTIRE INVESTMENT SHOULD PURCHASE THE SECURITIES.

3.  Page 3 of The PPM:

NO SALE WILL BE MADE TO ANY PERSON WHO CANNOT DEMONSTRATE COMPLIANCE WITH THE SUITABILITY STANDARDS DESCRIBED IN THIS MEMORANDUM. IF YOU ARE IN ANY DOUBT AS TO THE SUITABILITY OF AN INVESTMENT IN THE LLC INTERESTS, DETAILS OF WHICH ARE GIVEN IN THIS MEMORANDUM, YOU SHOULD CONSULT YOUR INVESTMENT ADVISER.

4.  Page 4 of The PPM:

A PROSPECTIVE INVESTOR SHOULD NOT SUBSCRIBE FOR THE SECURITIES DESCRIBED HEREIN UNLESS SATISFIED THAT HE/SHE OR HE/SHE AND HIS/HER INVESTMENT REPRESENTATIVE HAS ASKED FOR AND RECEIVED ALL INFORMATION WHICH WOULD ENABLE HIM/HER OR BOTH OF THEM TO EVALUATE THE MERITS AND RISKS OF THE PROPOSED INVESTMENT.

5.  Page 11 of The PPM:

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive.Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

**FORWARD-LOOKING STATEMENTS**

CERTAIN STATEMENTS IN THIS MEMORANDUM INCLUDING BUT NOT LIMITED TO STATEMENTS, ESTIMATES AND PROJECTIONS OF FUTURE TRENDS AND OF THE ANTICIPATED FUTURE PERFORMANCE OF THE FUND CONSTITUTE "FORWARDLOOKING STATEMENTS". SUCH FORWARD-LOOKING STATEMENTS INVOLVE KNOWN AND UNKNOWN RISKS, UNCERTAINTIES AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE ACTUAL RESULTS, PERFORMANCE OR ACHIEVEMENTS OF THE FUND, OR INDUSTRY RESULTS, TO DIFFER MATERIALLY FROM ANY FUTURE RESULTS, PERFORMANCE OR ACHIEVEMENT IMPLIED BY SUCH FORWARD-LOOKING STATEMENTS.

STATEMENTS IN THIS MEMORANDUM THAT ARE FORWARD-LOOKING, INVOLVE NUMEROUS RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM EXPECTED RESULTS AND ARE BASED ON THE FUND'S MANAGER'S CURRENT BELIEFS AND ASSUMPTIONS REGARDING A LARGE NUMBER OF FACTORS AFFECTING ITS BUSINESS. ACTUAL RESULTS MAY DIFFER MATERIALLY FROM EXPECTED RESULTS. THERE CAN BE NO ASSURANCE THAT (I) THE FUND'S MANAGER HAS CORRECTLY MEASURED OR IDENTIFIED ALL OF THE FACTORS AFFECTING ITS BUSINESS OR THE EXTENT OF THEIR LIKELY IMPACT, (II) THE PUBLICLY AVAILABLE INFORMATION WITH RESPECT TO THESE FACTORS ON WHICH THE FUND'S MANAGER'S ANALYSIS IS BASED IS COMPLETE OR ACCURATE, (III) THE FUND'S MANAGER'S ANALYSIS IS CORRECT OR (IV) THE FUND'S STRATEGY, WHICH IS BASED IN PART ON THIS ANALYSIS, WILL BE SUCCESSFUL.

6.      Page 18 of The PPM:

Risk Factors: AN INVESTMENT IN THE LLC INTERESTS THAT ARE THE SUBJECT OF THE MEMORANDUM IS HIGHLY SPECULATIVE AND INVOLVES A HIGH DEGREE OF RISK. INVESTORS SHOULD BE ABLE TO WITHSTAND THE TOTAL LOSS OF THEIR ENTIRE INVESTMENT IN THE LLC INTERESTS. PROSPECTIVE PURCHASERS SHOULD CAREFULLY REVIEW THE INFORMATION SET FORTH UNDER "RISK FACTORS" AS WELL AS OTHER INFORMATION CONTAINED IN THIS MEMORANDUM. THERE CAN BE NO ASSURANCE THAT THE FUND'S OBJECTIVES CAN BE ACHIEVED. (SEE "RISK    FACTORS").

7.      Page 19 of The PPM:

Financial Projections Require Caution: Subscribers are urged to consider that the financial projections discussed, if any, were prepared by the Fund's Manager assuming a conservative position in the marketplace for the Fund and the completion of this Offering. Such projections are not guarantees of future financial performance, nor should they be understood as such by Subscribers. Subscribers should be aware of the inherent inaccuracies of forecasting. Although the Manager has a reasonable basis for these projections and has provided them herewith in good faith, Subscribers may wish to consult independent market professionals about the Fund's future performance.

OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM
CASE NO. CV 09-000665 LKK-DAD

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive, Las Vegas, Nevada 89149
Telephone: (702) 658-0969, Facsimile (702) 966-3707

8.      Page 19 of The PPM:

This Memorandum contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995, which reflect the Manager's current judgment on certain issues. Those statements appear in a number of places in this Memorandum and in the documents incorporated by reference, if any, and may include statements regarding, among other matters, the Fund's growth opportunities and other factors affecting the Fund's financial condition or results of operations. Because such statements apply to future events, they are subject to risks and uncertainties that could cause the actual results to differ materially from those anticipated in this Memorandum. Important factors that could cause actual results to differ materially include, but are not limited to: as fluctuations in interest rates, changes in global credit and derivatives markets, revisions to laws pertaining to the rating of corporate obligations, changes in local and national unemployment rates, variations in the local and national economy and occurrences of natural disasters or other such disasters. The Fund is a newly formed entity and has a limited operating history. Actual results may differ materially from these statements as a result of risk factors inherent in the Fund's business, industry, or other factors. Risk factors that are applicable to the Fund are more fully described below.

9.      In addition to all the above, pages 21 through 29 of The PPM lists numerous "RISK FACTORS" as to an investment in Vestium including THE FOLLOWING:

a.      "Lack of Liquidity" on page 21;

b.      "The Fund has a limited operating history" on page 23;

c.      "Restrictions on Transfers and Withdrawals - Suspension of Withdrawals." specifically states:

The right of any Member to withdraw monies from the Fund is subject to the provision by the Manager for Fund liabilities in accordance with generally accepted accounting principles and reserves for contingencies. In addition, the Manager may, in **[its sole discretion during the existence of any state of affairs that, in the opinion of the Manager, make the determination that the price, value or disposition of the Fund's investments is impractical or prejudicial to the non-withdrawing Members.**

d.      "There is no assurance that the Fund will turn a profit" on page 23;

e.      "Financial projections provided may prove inaccurate" on page 24;

f.      "The Fund may not achieve it goals and objectives" on page 25;

g.      "The Fund is subject to various economic risks" on page 26;

h.      "The Fund may suffer uninsured losses" on page 27;

i.      "Market risk" on page 28;

j.      "General Market Risks" on page 28;

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone: (702) 658-0969; Facsimile (702) 966-3707

k.      "Subordinated MTN Risks" on page 28;

l.      "Defaults on the MTNs the Fund acquires will reduce the value of its investments and will harm results of operations" on page 29;

m.      "Special Risks of MTN investing" on page 29;

n.      "Non-U.S. Investments" on page 29.

In addition to the PPM, the Vestium Equity Fund, LLC "Subscription Booklet" attached hereto as **Exhibit F** also emphasizes and repeats risks associated with an investment made in Vestium. The risks described in the Subscription Booklet are outlined and stated as follows:

1.      Terms and Conditions of Subscription Agreement - Page 1:

2. **Independent Determination and No Investment Advice Given**. The Subscriber acknowledges and represents that the Manager has provided no advice to the Subscriber about whether to subscribe for an Interest in the Fund. The Subscriber has requested and received from the Manager all information that the Subscriber, after due inquiry, deemed relevant to subscribing for an Interest in the Fund. Subscriber has taken into account that there is a risk of loss of this investment, and that this investment will be relatively illiquid so that invested funds will not be readily available. Taking into account these factors and all other factors relating to the Fund, the Subscriber has independently concluded that this investment is suitable for the Subscriber.

2.      Terms and Conditions of Subscription Agreement - Page 2:

3**(e) Subscriber Able to Bear Risks and Protect Own Interests**. The Subscriber is an Accredited Investor (as indicated on the attached Investor Questionnaire, unless otherwise indicated thereon) and has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of investing in the Fund, and all information that the Subscriber has provided concerning the Subscriber, the Subscriber's financial position and knowledge of financial and business matters is true, correct and complete. The Subscriber acknowledges and understands that the Manager will rely on the information provided by the Subscriber in this Agreement and in the Investor Questionnaire that accompanies this Agreement for purposes of complying with Federal and applicable state securities laws. The Subscriber represents that it understands that an investment in the Fund involves significant risks not associated with other investment vehicles and is suitable only for persons of adequate financial means who have no need for liquidity in this investment. **The Subscriber also represents that no assurances or guarantees have been made to the Subscriber by anyone regarding whether the Fund's investment objective will be realized or whether the Fund's investment strategy will prove successful. The Subscriber**

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 658-0969; Facsimile (702) 966-3707

**recognizes that he or she may lose all or a portion of their investment in the Fund.** The Subscriber also understands that if he or she is subject to income tax, an investment in the Fund is likely (if the Fund is successful) to create taxable income or tax liabilities in excess of cash distributions to pay such liabilities. It is specifically understood and agreed by the Subscriber that the Manager and its affiliates have not made, nor by this Agreement shall be construed to make, directly or indirectly, explicitly or by implication, any representation, warranty, projection, assumption, promise, covenant, opinion, recommendation or other statement of any kind or nature with respect to the anticipated profits or losses of the Fund. The Manager has made available to the Subscriber and the Subscriber's accountants, attorneys and other advisors full and complete information concerning the financial structure of the Fund, and any and all data requested by the Subscriber as a basis for estimating the potential profits and losses of the Fund and the Subscriber acknowledges that the Subscriber has either reviewed such information or has waived review of such information.

3.    Terms and Conditions of Subscription Agreement - Page 4:

**(8)(b)(3) No Investment Advice Given**. The Signer acknowledges that (I) neither the Manager nor any of its Affiliates provides any investment advice on a regular basis to Subscriber (or, to the Signer's knowledge, to any other Plan Investor) and none of such parties provides any investment advice to Subscriber (or, to the Signer's knowledge, to any other Plan Investor) that serves as the primary basis of any investment decisions Subscriber makes as to any of its assets (or that such other Plan Investor(s) makes, as the case may be), or (ii) in the event that the Manager or any of its Affiliates has provided investment advice to the Subscriber as described in (I), that the Subscriber has consulted with Subscriber's own legal, accounting and tax advisors, and has obtained investment advice independent from the Manager and its Affiliates, and has not relied on the Manager or any of its Affiliates, in connection with Subscriber's decision to make this investment in the Fund.

In addition to The PPM and Subscription Booklet, investments in the Vestium Fund were subject to additional restrictions contained Section 5.6 on page 15 of the Vestium Equity Fund Limited Liability Operating Agreement (the "Vestium Operating Agreement").  A true and correct copy of the Vestium Operating Agreement is attached as **Exhibit G**.  The restrictions are stated as follows:

**5.6 Suspension of Withdrawals.** The Manager may suspend the payment of any withdrawals from the Members' capital accounts (I) for any period during which, as determined in good faith by the Manager, (a) any stock exchange or over–the-counter market on which a substantial part of the securities directly or indirectly owned by the Company are traded is closed (other than weekend and holiday closings) or trading on any such exchange or market is restricted or suspended, or (b) there exists a state of affairs that constitutes a state of emergency (a breakdown occurs in any of the means normally employed in ascertaining the value of a substantial part of the assets of the

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone: (702) 658-0969, Facsimile (702) 966-3707

1  Company), as a result of which disposal of the securities owned by the Company is not
   reasonably practicable or it is not reasonably practicable to determine fairly the value
2  of its assets, (ii) during the existence of any state of affairs which, in the sole opinion
   of the Manager, makes the determination of the price, value or disposition of the
3  Company's investments impractical or prejudicial to the non-withdrawing Members,
   (iii) in the event that withdrawals or distributions, in the opinion of the Manager,
4  results in violation of applicable law, or (iv) in the event that all Members, in the
   aggregate, request withdrawals of twenty-five (25%) percent or more of the
5  Company's Net Worth as of any date of withdrawal. All Members will be notified of
   any such suspension, and the termination of any such suspension, by means of a
6  written notice.

7      In summary, Vasallo, Kenitzer and EIMT were informed numerous times in numerous

8  documents that the managers and the Vestium Fund were not under any obligation to cash out any

9  investments at a substantial loss during the 4th quarter of 2008.  The unanticipated meltdown on Wall

10 Street and the associated bond markets were risks identified and covered by The PPM, the

11 Subscription Booklet and the Vestium Operating Agreement (referred to collectively as the "Vestium

12 Documents").  The Vestium Documents clearly gave the Managers of the Vestium Fund authority to

13 suspend any redemptions until the market stabilized.  The actions taken by Mr. Buckhannon to protect

14 the assets of the Vestium Fund and all of its investors were prudent, reasonable and allowable under

15 the Vestium Documents.  Mr. Buckhannon clearly told Vasallo that under the existing market

16 conditions, no redemptions would be made. It was Vasallo, as the President of EIMT, who insisted

17 that Vestium sell bonds at a significant loss, agreed to absorb those losses and who executed a Release

18 Agreement.  The Release Agreement resulted in EIMT absorbing the losses and settling the entire

19 Vestium balance.  It is absolutely absurd given the totality of the facts, that the Receiver would now

20 come in after the fact and demand full payment of the original $4,000,000 investment when the

21 account was settled in full in a written document.

22     A full accounting of EIMT's account with Vestium shows that EIMT owes Vestium

23 $42,125,98.  This accounting  is discussed in detail in the Expert Report of Steve Martin, CPA

24 attached hereto as **Exhibit B**. Mr. Martin is a CPA and a Certified Fraud Auditor and the former

25 Controller for the State of Nevada.  His CV and case list is attached as **Exhibit C**. Mr. Martin's

26 analysis of the Vestium account is presented on pages 2-3 of his Expert Report. The Expert Report

27

28     OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM
       CASE NO. CV 09-000665 LKK-DAD

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive, Las Vegas, Nevada 89149
Telephone: (702) 658-0969, Facsimile (702) 966-3707

also contains exhibits of source documents verifying the amounts contained in the table below that is

reproduction of a table contained on page 2 of the Expert Report.

| Equity Investment Management Trading Corp. ("EIMT") | | | | | |
|---|---|---|---|---|---|
| Line # | Date | Sending Entity | Receiving Entity | Amount | Balance |
| 1 | 6/30/2008 | EIMT | Vestium Equity | 1,000,000.00 | 1,000,000.00 |
| 2 | 6/30/2008 | Veritas Inv., LLC | Vestium Equity | 1,000,000.00 | 2,000,000.00 |
| 3 | 7/3/2008 | EIMT | Vestium Equity | 2,000,000.00 | 4,000,000 |
| 4 | 8/29/2008 | Vestium Equity | EIMT | (30,834.70) | 3,969,165.30 |
| 5 | 9/29/2008 | Vestium Equity | EIMT | (48,057.10) | 3,921,108.20 |
| 6 | 10/29/2008 | Vestium Equity | EIMT | (165,095.80) | 3,756,012.40 |
| 7 | 12/3/2008 | Vestium Equity | EIMT | (26,012.18) | 3,730,000.22 |
| 8 | 12/3/2008 | Vestium Equity | EIMT | (81,391.28) | 3,648,608.94 |
| 9 | 12/22/2008 | Vestium Equity | EIMT | (2,000,000.00) | 1,648,608.94 |
| 10 | 1/12/2009 | Vestium Equity | EIMT | (1,200,000.00) | 448,608.94 |
| | Other Adjustments | | | | |
| 11 | 12/18/2008 | Wstrn Un Corp, 5.93% Int., 10/1/2016 Maturity | | (914,432.92) | (465,823.98) |
| 12[1] | 12/31/2008 | Profit Distribution Vertitas Investments, LLC | | 310,110.00 | (155,713.98) |
| 13 | 12/31/2008 | Profit Distribution EIMT, LLC | | 113,558.00 | (42,125.98) |
| | | | Final Balance | | (42,125.98) |

Vestium that included This accounting clearly shows that not only is EIMT not entitled to

$718,068.80 as the Receiver claims, but EIMT owes Vestium $42,125.98.   Therefore, the Trustees

demand for reimbursement of $718,068.80 on behalf of EIMT must be denied in full.

//

//

---

[1] Included as **Exhibit H** is a true and correct copy of the Vestium 2008 Federal Income Tax Return that reflects a K-1 issued to Veritas Investments, LLC reflecting an allocated profit of $310,000 and a K-1 for EIMT, LLC issues to EIMT, LLC reflecting an allocated profit of $113,558. See also **Exhibit I** for the internal "book: balance sheet of Vestium as of December 31, 2008 and the Vestium profit and loss statement for the twelve months ended December 31, 2008.

1   //

2   **B.      Transactions as related to Arcanum.**

3          The Funds completely disputes the Receiver's claims that Arcanum owes $1,635,128.61 to the

4   following entities:

5          1.      $633,651.82 to what the Receiver refers to as the EIMT Kenitzer Account #1;

6          2.      $367,824.97 to what the Receiver refers to as the EIMT Kenitzer Account #2; and

7          3.      $633,651.82 to what the Receiver refers to as the EIMT Kenitzer Account #3.

8   The Funds do agree that the following statements contained in the Receiver's Memorandum of Points

9   and Authorities are correct:

10         1.      Arcanum received $500,000 in funds from EIMT Properties, LLC;

11         2.      Arcanum received $330,000 in funds from Kenitzer 24, LLC;

12         3.      Arcanum received $500,000 in funds from the Kenitzer Family Foundation;

13         4.      Arcanum received a total of $1,330,000 from the three above listed entities;

14         5.      Vassallo and Kenitzer exercised full dominion and control over EIMT, LLC; EIMT

15                 Properties, LLC; Kenitzer 24, LLC; and the Kenitzer Family Foundation and that the

16                 totality of the investments made by these entities should be treated as one and the

17                 same.

18  In addition to the facts agreed to above, The Funds submit these additional facts:

19         1.      **Exhibit J** is a true and correct copy of the Arcanum Master Loan Agreement that was

20                 executed by EIMT Properties, LLC.

21         2.      **Exhibit K** is a true and correct copy of the Arcanum Master Loan Agreement that was

22                 executed by Kenitzer 24, LLC.

23         3.      **Exhibit L** is a true and correct copy of the Arcanum Master Loan Agreement that was

24                 executed by th Kenitzer Family Foundation.

25         As can be seen, each party executed an identical master loan agreement.  As stated by the

26  Receiver, each of these separate entities were controlled by the same individuals and should be treated

27

28                                  OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM
                                    CASE NO. CV 09-000665 LKK-DAD

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

1   as one and the same fund.  For this reason, the three entities will be collectively referred to herein as

2   the "Combined Entities".  Therefore, the Funds agree that it received a total of $1,330,000 from the

3   Combined Entities.

4          On February 9, 2009, Mr. Vassallo instructed and confirmed to Mr. Buckhannon that Mr.

5   Buckhannon was to wire $872,305.80 to Phlorian Racing, Ltd. The $872,305.80 was a partial

6   redemption of the $1,330,000 loan to Arcanum by the Combined Entities.  See page 4, paragraph 23

7   of **Exhibit A**. A true and correct copy of a redacted USD current account is attached hereto as **Exhibit**

8   **M** that reflects the $872,305.80 payment to Phlorian Racing, Ltd. See also Steve Martin Expert Report

9   attached hereto as **Exhibit B**, specifically pages 3,4,and 5 for a discussion of the Arcanum account

10  and a reconciliation of the amount due and owing as related to Arcanum.   On February 27, 2009,

11  Vassallo  instructed and confirmed to Mr. Buckhannon that Mr. Buckhannon was to wire $100,000

12  to The Spirit Foundation. The $100,000 was a partial redemption of the $1,330,000 loan to Arcanum

13  by the Combined Entities.  See page 4, paragraph 25 of **Exhibit A**.  A true and correct copy of a

14  redacted USD current account is attached hereto as **Exhibit M** that reflects the $100,000 payment to

15  The Spirit Foundation.  See also Steve Martin Expert Report attached hereto as **Exhibit B**, specifically

16  pages 3,4,and 5 for a discussion of the Arcanum account and a reconciliation of the amount due and

17  owing as related to Arcanum.     Both of these payments were made after Mr. Buckhannon was

18  threatened by a group now known to be associated with the Defendants.  See Bee Article attached

19  hereto as **Exhibit N**.

20         The two transactions on February 9, 2009 and February 27, 2009 totaling $972,305.80 were

21  applied to the $1,330,000 loan balance that Arcanum owed to the Combined Entities.  See page 4,

22  paragraph 27 of **Exhibit A**. The $972,305.80 was held in a Suspense account until September 2009.

23  A memo drafted by Don Sowers, the Controller and  Chief Accountant of Arcanum explains why the

24  $972,305.80 was not recorded until September 2009. A true and correct copy of Mr. Sowers internal

25  memorandum is attached hereto as **Exhibit O**.  See also page 4, paragraph 28 of **Exhibit A**.

26         The only basis the receiver has to even suggest that any EIMT, Vassallo, or Kenitzer money

27

28          OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM
            CASE NO. CV 09-000665 LKK-DAD

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

was even invested with Arcanum Equity is a statement from Mr. Kenitzer.  Mr. Kenitzer is a person who was involved in a long running fraud  that included the production of fake investor statements and balances that can only be classified as a "total scam".  Mr. Kenitzer lacks any credibility whatsoever.  Mr. Kenitzer states in his declaration "I am unaware of any legitimate explanation for a $970,000 drop in value on the investments which purportedly reached maturity at the end of June 2009." See Declaration of Kenneth Kenitzer in Support of Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium, p. 6, ¶ 18. The Funds dispute this claim. Mr. Kenitzer was informed by Mr. Buckhannon that the balances due and owing would be reduced by the previous remittances in the amount of $972,3095.80. See Affidavit of Robert Buckhannon attached hereto as **Exhibit A**, page 4, paragraph 28.

Mr. Kenitzer's claim that he is unaware of the $972,305.80 in remittances is another fabrication and an attempt to now defraud The Funds out of  $972,305.80.  The $972,305.80 was held in a Suspense account until September 2009. A memo drafted by Don Sowers, the Controller and Chief Accountant of Arcanum explains why the $972,305.80 was not recorded until September 2009. A true and correct copy of Mr. Sowers internal memorandum is attached hereto as **Exhibit O.**  On June 18, 2009 Arcanum remitted $50,000 to Kenitzer 24, LLC. See **Exhibit B**, pages 3,4,and 5 for a discussion of the Arcanum account and a reconciliation of the amount due and owing from Arcanum.

The Receiver has also increased the original combined loan of $1,330,000 to $1,635,128.61 because the Receiver claims the Combined Entities are entitled to an additional $305,128,61 of profits. However, there were no profits.  Exhibits J, K and L signed by the entities contain the same section 2.05 which states:

> **2.05  Rate of Return** - The Lender shall receive an accumulative rate of return equal to (50%) of net profits generated on a pro-rated share of the Lender's Loan amount in reference to the total cash as listed upon Arcanum's Balance sheet. Redemption of Profits will be available on a monthly basis, in whole or part, or profit may be left in and added to the loan amount thus compounding the return. No promissory note will be issued for the interest earned and left with Arcanum to compound returns.

The key definitive words in the above paragraph are **"*50% of the net profits generated*"**.

**Exhibit P** attached hereto is a true and correct copy of Arcanum's revised tax return for twelve

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive.Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM
CASE NO. CV 09-000665 LKK-DAD

months ended December 31, 2008. This tax return reflects a loss of ($3,930,081). **Exhibit Q** attached hereto is a true and correct copy of Arcanum's financial statements for the twelve months ended December 31, 2008. The financial statement reflects a loss of ($3,934,301.57). While previously issued statements indicated a profit, these previous statements reflected anticipated profits that were improperly recorded. See also Steve Martin Expert Report attached hereto as **Exhibit B**, specifically pages 3,4,and 5 for a discussion of the Arcanum account and a reconciliation of the amount due and owing as related to Arcanum.

A summary of the Arcanum account shows that the Combined Entities are owned $307,694.20, not $1,635,128.61 as claimed by the Receiver. The Expert Report also contains exhibits of source documents verifying the amounts contained in the table below that is reproduction of a table contained on page 4 of the Expert Report.

| Arcanum Equity | | | | | |
|---|---|---|---|---|---|
| Line # | Date | Sending Entity | Receiving Entity | Amount | Balance |
| 1 | 6/27/2008 | EIMT Properties (Vassallo) | Vestium Equity | 500,000 | 500,000 |
| 2 | 6/27/2008 | Kenitzer 24 | Vestium Equity | 330,000 | 830,000 |
| 3 | 6/27/2008 | Kenitzer Family Foundation | Vestium Equity | 500,000 | 1,330,000 |
| 4 | 6/18/2009 | Arcanum | EIMT | (50,000) | 1,280,000 |
| | **Other Adjustments** | | | | |
| 5 | 2/9/2009 | Arcanum | Phlorian Racing, Ltd. | (872,306) | 407,694 |
| 6 | 2/27/2009 | Arcanum | The Spirit Foundation | (100,000) | 307,694 |
| | | | **Final Balance Due** | | **307,694** |

This accounting clearly shows that the Receiver is entitled to $307,694. Therefore, the Trustees demand for reimbursement of $1,635,128.61 on behalf of the Combined entities must be denied and limited to $307,694.

## C.     The Stewardship Group

The Funds agree that The Stewardship Group ("Stewardship") has money invested with Arcanum Equity; however, there is only a tenuous connection between Stewardship and either

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive, Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone: (702) 658-0969, Facsimile: (702) 966-3707

Vassallo or Kenitzer. The "Authorized Signatories" on the Accredited Investor Acknowledgment provided by The Stewardship Group are Charles Hooper and Brian Denman. See **Exhibit R** for a true and correct copy of the Accredited Investor Acknowledgment.   Charles Hooper and Brian Denman signed all documents related to Steward ship including Schedule A – Lenders Document DB (a true and correct copy attached as **Exhibit S**) and Schedule C – Limited Trading Authorization DB (a true and correct copy attached as **Exhibit T**).   The Funds argue that the Trustee must seek recovery of funds from The Stewardship Group through the Stewardship Group, not from the Funds.

A copy of an E-Mail from Charles Hooper, The Stewardship Group, dated April 3, 2009, is attached under **Exhibit U**. An excerpt from the Charles Hooper's  E-Mail states as follows:

> This was bewildering to say the least as you took the problems of "Ken and Anthony" and applied them to this investment and The Stewardship Group. …. It has nothing to do with Ken or Anthony…….TSG has a number of 501(C0(3) organizations that are relying on your organization honoring and keeping the contracts that were offered and accepted……We have been open and forthcoming in sharing what was happening with "one" of our clients. That is our responsibility.

In the case of The Stewardship Group, it would appear that the Receiver is attempting to identify specific funds in a long chain of co-mingled  funds. Arcanum can only connect certain individuals to The Stewardship Group.  Arcanum has no knowledge of the size and scope of The Stewardship Group operations or investments.  Arcanum has no knowledge whether Vassallo, Kenitzer, or EIMT have $1, $20, or as alleged $50,000 with Arcanum Equity via The Stewardship Group. It is impossible to know how much of the Vassallo, Kenitzer, or EIMT monies where invested with Arcanum via The Stewardship Group without the information provided by both the Receiver and the Stewardship Group. It is up to the Receiver to obtain a statement from the Stewardship Group that the $50,000 invested in Arcanum by the Stewardship Group belongs to EIMT, not the statements of Mr. Kenitzer, that possibly lacks any validity.

## D.    Constructive Trust

The funds have no objection to the Trustees argument that any funds presently held by the Funds that rightly belong to the Combined Entities should be held in a constructive trust for the entities represented by the Trustee.  The elements required to impose a constructive trust are as follows:

1   (1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquistion or detention of the res
2   by another party who is not entitled to it.

3   *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1069 (1998).  The funds do not dispute, based on

4   the facts as the Funds understand them, that the monies that were invested with the Funds were

5   wrongfully obtained by the defendants in the above entitled action.  "The essence of the theory of

6   constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of

7   his or her own wrongdoing."  *Id*.  The Funds only object if the Trustee is attempting to recover an

8   amount from the Funds that is in excess of what is rightfully owed.  As was explained earlier and in

9   Steve Martin's Expert Report, it is The Funds' position that the Combined Entities are owed a total

10  of $265,568.22.

11  **E.      Conclusion**

12          For the reasons stated above, the Court must deny the Trustee's motion in full relating to

13  monies sought from Vestium and The Stewardship Group.  The Trustees demand for $2,403,197.41

14  on behalf of the Combined entities must be denied and limited to $265,568.22.  The Funds do not

15  object if the Court rules that the $265,568.22 should be held in a constructive trust for the benefit of

16  the entities represented by the Trustee.

17

18  DATED: November 23, 2009                **THE LAW OFFICE OF C. DEAN**

19                                          **HOMAYOUNI, ESQ.**

20

21                                          By:  /s/ C. Dean Homayouni
                                            _____
22                                          C. DEAN HOMAYOUNI, ESQ., CPA
                                            California Bar No.: 225282
23                                          7764 Painted Sunset Drive
                                            Las Vegas, Nevada 89149
24                                          Attorney for Defendants

25

26

27

28

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 658-0969, Facsimile (702) 966-3707

# EXHIBIT A

**THE LAW OFFICE OF C. DEAN HOMAYOUNI, ESQ.**
C. DEAN HOMAYOUNI, ESQ., CPA (225282)
7764 Painted Sunset Drive
Las Vegas, NV   89149
Telephone: (702) 368-0500
Facsimile: (702) 433-0700
Email: dean.homayouni@gmail.com

Attorney for Arcanum Equity Fund, LLC and  Vestium Management Group, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CASE NO.: CV 09-000665 LKK-DAD |
| Plaintiff, | **AFFIDAVIT OF ROBERT L. BUCKHANNON IN SUPPORT OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM** |
| v. | |
| ANTHONY VASSALLO, et. al, | Date:        December 7, 2009 |
| Defendants. | Time:        10:00 a.m. |
| | Location:   Courtroom 4, 15th Floor |
| | Judge:      Hon. Lawrence K. Karlton |

I, Robert L. Buckhannon (hereinafter referred to as "Robert Buckhannon"), being first duly sworn, deposes and says:

1.     I, am over eighteen years old and I am a resident of the State of Nevada, County of Clark.

2.     I am a Managing Member of Vestium Equity Fund, LLC (hereinafter referred to as "Vestium").

3.     In November 2008 and December 2008 Mr. Kenitzer and Mr. Vassallo began demanding that the $4,000,000 investment EIMT, LLC had made in Vestium Equity Fund, LLC be remitted.

4.      I participated in a series of telephone conference meetings with Anthony Vassallo, in which I told Mr. Vassallo that numerous investments that Vestium had made had significantly declined in value as a result of the worst financial Wall Street meltdown since the Great

AFFIDAVIT OF ROBERT L. BUCKHANNON IN SUPPORT OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM
CASE NO. CV 09-000665 LKK-DAD

1

The Law Office of
**C. DEAN HOMAYOUNI**
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 368-0500, Facsimile (702) 433-0700

Depression, during the fourth quarter of 2008.

5. I stated to Mr. Vassallo numerous times that Vestium was not willing to cash out investments that has unexpectedly declined in value and was not required to do so in accordance with the terms of the Vestium Private Placement Memorandum.

6. Mr. Vasallo agreed that any losses to be incurred as a result of Vestium redeeming its investments in order to satisfy EIMT's redemption request would be absorbed and allocated to the EIMT account balance.

7. On Thursday, December 18, 2008 Vestium sold $3,969,045.89 in WU bonds for $3,054,612.97, incurring a loss of ($914,432.92).

8. Mr. Vassallo had agreed that any losses to be incurred by Vestium to cash out the bonds would be allocated to the EIMT balance outstanding.

9. $2 million was wired to EIMT on Monday, December 22, 2009.

10. Vestium wired the remaining $1.2 million to settle the EIMT Vestium account on January 12, 2009, two (2) days after Vassallo, as the authorized representative of Veritas and EIMT, executed a Release Agreement to the settle the Veritas and EIMT accounts for the final payment of $1.2 million.

11. The Release Agreement attached as **Exhibit D** to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium for a true and correct copy of the Release Agreement executed by Anthony Vassallo, in his capacity as an authorized representative of EIMT, LLC and Veritas.

12. Mr. Vassallo, as the Manager and President of EIMT, agreed to absorb all losses that Vestium incurred (that amounted to $914,432.92), and that Vestium would not have sold the bonds except to satisfy the request of EIMT that funds be remitted.

13. The Vestium Private Placement Memorandum (hereinafter referred to as the "Vestium PPM") attached as **Exhibit E** to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is a true and correct copy of a document given to EIMT, LLC and was

AFFIDAVIT OF ROBERT L. BUCKHANNON IN SUPPORT OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM

CASE NO. CV 09-000665 LKK-DAD

2

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive Las Vegas, Nevada 89149
Telephone (702) 368-0500, Facsimile (702) 433-0700

1   subsequently executed by an authorized representative of EIMT, LLC prior to Vestium

2   accepting $4.0 million from EIMT, LLC.

14.   It is clear from the terms of the Vestium PPM that Vestium and its managers are not required
      to blindly redeem account balances.

15.   The PPM listed numerous risk factors that could result in redemptions being delayed or not
      made at all.

16.   The Vestium Equity Fund, LLC "Subscription Booklet" attached as **Exhibit F** to the
      Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is
      a true and correct copy of a document given to EIMT, LLC and was subsequently executed
      by an authorized representative of EIMT, LLC prior to Vestium accepting $4.0 million from
      EIMT, LLC.

17.   The  Vestium Equity Fund Limited Liability Operating Agreement attached as **Exhibit G** to
      the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium
      is a true and correct copy of a document given to EIMT, LLC and was subsequently executed
      by an authorized representative of EIMT, LLC prior to Vestium accepting $4.0 million from
      EIMT, LLC.

18.   The  Vestium Equity Fund, LLC federal income tax return attached as **Exhibit H** to the
      Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is
      a true and correct copy of the Vestium 2008 tax return for the twelve months ended December
      31, 2008.

19.   The financial statements comprised of a balance sheet and income statement attached as
      **Exhibit I** to the Opposition to Receiver's Motion to Order Disgorgement of Funds from
      Arcanum/Vestium is a true and correct copy of the Vestium "book" balance sheet and income
      statement for the twelve months ended December 31, 2008.

20.   EIMT Properties, LLC executed Arcanum Master Loan Agreement  attached as **Exhibit J** to
      the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium
      is a true and correct copy of the Arcanum Master Loan Agreement executed by EIMT

AFFIDAVIT OF ROBERT L. BUCKHANNON IN SUPPORT OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM
ARCANUM/VESTIUM
CASE NO. CV 09-000665 LKK-DAD

3

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 368-0500, Facsimile (702) 433-0700

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive, Las Vegas, Nevada 89149
Telephone (702) 368-0500, Facsimile (702) 433-0700

Properties, LLC.

21.   Kenitzer 24, LLC executed Arcanum Master Loan Agreement  attached as **Exhibit K** to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is a true and correct copy of the Arcanum Master Loan Agreement executed by Kenitzer 24, LLC.

22.   The Kenitzer Family Foundation executed Arcanum Master Loan Agreement  attached as **Exhibit L** to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is a true and correct copy of the Arcanum Master Loan Agreement executed by The Kenitzer Family Foundation.

23.   On February 9, 2009 Mr. Vassallo instructed and confirmed that I was to wire $872,305.80 to Phlorian Racing, Ltd. The $872,305.80 was a partial redemption of the $1,330,000 investment in Arcanum by EIMT Properties, LLC, Kenitzer 24, LLC and The Kenitzer Family Foundation.

24.   A true and correct copy of a redacted USD current account is attached  to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium as **Exhibit M** that reflects the $872,305.80 payment to Phlorian Racing, Ltd.

25.   On February 27, 2009 Mr. Vassallo  instructed and confirmed that I was to wire $100,000 to The Spirit Foundation. The $100,000 was a partial redemption of the $1,330,000 investment in Arcanum by EIMT Properties, LLC, Kenitzer 24, LLC and The Kenitzer Family Foundation.

26.    A true and correct copy of a redacted USD current account is attached  to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium as **Exhibit M** that reflects the $100,000 payment to The Sprint Foundation.

27.   The two transactions on February 9, 2009 and February 27, 2009 resulted in $972,305.80 redemption of the $1,330,000 investment in the Arcanum by EIMT Properties, LLC, Kenitzer 24, LLC and The Kenitzer Family Foundation.

28.   I had informed both Mr. Kenitzer and Mr. Vassallo that the $972,305.80 would be applied to

AFFIDAVIT OF ROBERT L. BUCKHANNON IN SUPPORT OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM ARCANUM/VESTIUM
CASE NO. CV 09-000665 LKK-DAD

4

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive.Las Vegas, Nevada 89149
Telephone (702) 368-0500, Facsimile (702) 433-0700

the EIMT, LLC, Kenitzer 24, LLC and The Kenitzer Family Foundation account balances held in Arcanum.

29.   The $972,305.80 was held in a Suspense account until September 2009. A memo drafted by Don Sowers, the Controller and Chief Accountant of Arcanum explains why the $972,305.80 was not recorded until September 2009. A true and correct copy of Mr. Sowers internal memorandum is attached hereto as **Exhibit O.**

30.   **Exhibit P**, attached to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium, is a true and correct copy of a revised tax return for Arcanum Equity Fund, LLC for the twelve (12) months ended December 31, 2008 that reflects a loss of ($3,930,081).

31.   **Exhibit Q**, attached to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is a true and correct copy of the financial statements, that includes a balance sheet and income statement, for Arcanum Equity Fund, LLC for the 12 months ended December 31, 2008 that reflects a loss of ($3,934,301.57).

32.   **Exhibit R**, attached to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is a for a true and correct copy of the Accredited Investor Acknowledgment completed by the Stewardship Group.

33.    **Exhibit S**, attached to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is a for a true and correct copy of Schedule A – Lenders Document DB completed by the Stewardship Group.

34.   **Exhibit T**, attached to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is a for a true and correct copy of Schedule C – Limited Trading Authorization DB completed by the Stewardship Group.

35.   **Exhibit U**, attached to the Opposition to Receiver's Motion to Order Disgorgement of Funds from Arcanum/Vestium is a for a true and correct of an E-Mail from Charles Hooper, The Stewardship Group, dated April 3, 2009.

AFFIDAVIT OF ROBERT L. BUCKHANNON IN SUPPORT OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM
ARCANUM/VESTIUM
CASE NO. CV  09-000665 LKK-DAD

5

1   Further affiant sayeth naught.

2

3   _____      November 21, 2009
                                          _____
4   ROBERT L. BUCKHANNON                  Date

5                                         State of Nevada
                                          County of Clark
6                                         _____
       NOTARY PUBLIC                      Signed or attested before me on 11/21/09 by
7      STATE OF NEVADA                    Robert Lyle Buckhannon
       County of Clark                    (Notary Stamp)   Sarah R. Bonas
8      SARAH R. BONAS                                _____
       No. 07-5300-1                               (Signature of notarial of cer)
       My Appointment Expires Aug 10, 2011

9

10

The Law Office of
C. DEAN HOMAYOUNI
7764 Painted Sunset Drive,Las Vegas, Nevada 89149
Telephone (702) 368-0500, Facsimile (702) 433-0700

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   AFFIDAVIT OF ROBERT L. BUCKHANNON IN SUPPORT OPPOSITION TO RECEIVER'S MOTION TO ORDER DISGORGEMENT OF FUNDS FROM
                                          ARCANUM/VESTIUM
                                          CASE NO. CV  09-000665 LKK-DAD

# EXHIBIT B

# STEVEN E. MARTIN

### CERTIFIED PUBLIC ACCOUNTANT
### CERTIFIED FRAUD EXAMINER
### CERTIFIED VALUATION ANALYST

MEMBER AMERICAN INSTITUTE OF
CERTIFIED PUBLIC ACCOUNTANTS

MEMBER NEVADA SOCIETY OF
CERTIFIED PUBLIC ACCOUNTANTS

November 19, 2009

C. Dean Homayouni, Esq
Law Offices of C. Dean Homayouni, Esq.
7764 Painted Sunset Drive
Las Vegas, NV 89149

**Re: Vestium Management Group, LLC, Vestium Equity Fund, LLC and Arcanum Equity Fund, LLC**

Vestium Management Group, LLC and Vestium Equity Fund, LLC (together referred to as "Vestium Equity") and Arcanum Equity Fund, LLC ("Arcanum Equity"") are a group of investment funds. Equity Investment Management and Trading, Inc. and Veritas Investments (together referred to as "EIMT"), EIMT Properties, Kenitzer 24, Kenitzer Family Foundation, and The Stewardship Group were investor groups, which invested money into the Vestium Funds in 2008.

On April 30, 2009 Stephen E. Anderson ("Receiver") was appointed temporary Receiver for EIMT followed by a permanent appointment on July 31, 2009 by the United States District Court Eastern California in the case: Securities Exchange Commission v Anthony Vassallo, et al. The Receiver for EIMT has stated regarding EIMT that; "I am further informed and believe that the reported "returns" and "profits" were entirely fictional and Vassallo has not had an active trading account at TradeStations since 2007. EIMT was operated as a Ponzi Scheme". The Receiver has the responsibility to recover all legitimate assets of EIMT, and the Receiver has identified Anthony Vassallo ("Vassallo") as the President and Director of EIMT, and Kenneth Kenitzer ("Kenitzer") as Vice President of EIMT.

This report covers the monies paid into Vestium Funds by EIMT and those entities related to Vassallo and Kenitzer; those funds repaid to EIMT; and the balance that is due to EIMT or related parties. The Receiver specifically requested an order "to provide an accounting of all EIMT investor funds received by Vestium, including but not limited to all funds received from EIMT, Veritas, EIMT Properties, LLC, Kenitzer 24, LLC, Kenitzer Family Foundation, the Stewardship Group, or any person or entity for which Vassallo or Kenitzer had signing authority from January 2008 through the present."

This report will address the entities in three sections: (1) EIMT funds invested in Vestium Equity, (2) Funds invested in Arcanum Equity; and (3) The Stewardship Group. No financial statements or

other financial documents have been audited for this report, and no opinion can be offered regarding the accuracy of the documents provided. The information and documents used to prepare this report were provided by: (1) Robert L. Buckhannon managing member of Arcanum Equity and Vestium Equity; (2) Don Sowers, Controller for Arcanum Equity and Vestium Equity; (3) C. Dean Homayouni, Esq., CPA; (4) Receiver motions to Order Disgorgement: (5) other public sources.

## Section I – Vestium Equity

The chart below is a summary of the payments into Vestium Equity, the disbursements from Vestium Equity, and other factors which effect the final balance due EIMT. Following the chart is an explanation of each of the line items in the chart and a reference to the source document of the transaction.

| Equity Investment Management Trading Corp. ("EIMT") | | | | | |
|---|---|---|---|---|---|
| Line # | Date | Sending Entity | Receiving Entity | Amount | Balance |
| 1 | 6/30/08 | EIMT | Vestium Equity | 1,000,000.00 | 1,000,000.00 |
| 2 | 6/30/08 | Veritas Inv.,LLC | Vestium Equity | 1,000,000.00 | 2,000,000.00 |
| 3 | 7/3/08 | EIMT | Vestium Equity | 2,000,000.00 | 4,000,000.00 |
| 4 | 8/29/08 | Vestium Equity | EIMT | (30,834.70) | 3,969,165.30 |
| 5 | 9/29/08 | Vestium Equity | EIMT | (48,057.10) | 3,921,108.20 |
| 6 | 10/29/08 | Vestium Equity | EIMT | (165,095.80) | 3,756,012.40 |
| 7 | 12/3/08 | Vestium Equity | EIMT | (26,012.18) | 3,730,000.22 |
| 8 | 12/3/08 | Vestium Equity | EIMT | (81,391.28) | 3,648,608.94 |
| 9 | 12/22/08 | Vestium Equity | EIMT | (2,000,000.00) | 1,648,608.94 |
| 10 | 1/12/09 | Vestium Equity | EIMT | (1,200,000.00) | 448,608.94 |
| | | Other Adjustments | | | |
| 11 | 12/18/08 | | Wstrn Un Corp,  5.93% Int., 10/1/2016 Maturity | (914,432.92) | (465,823.98) |
| 12 | 12/31/08 | | Profit Distribution Veritas Investments, LLC | 310,110.00 | (155,713.98) |
| 13 | 12/31/08 | | Profit Distribution EIMT, LLC | 113,588.00 | (42,125.98) |
| | | | Final Balance Due | | (42,125.98) |

Line Number

1-3    Amounts confirmed through the Receiver information and corresponding Vestium Equity information.

4-7     See **Exhibit A** containing redacted copies of the Vestium Equity bank account #9501 at US Bank reflecting the various transfers to Veritas Investments, which is EIMT.

8.      See **Exhibit B** containing redacted copy of the Vestium Equity bank account #9501 at US Bank reflecting the transfers to EIMT.

9.      Amount confirmed through the Receiver information and corresponding Vestium Equity information.

10.     Amount confirmed through the Receiver information and corresponding Vestium Equity information.

11.     Vestium Equity purchased a Western Union Corporation bond with an interest rate of 5.93 % and a maturity date of October 1, 2016. Since Vassallo/EIMT was demanding an early withdrawal of their principle investment, the sale of this bond was required to provide the $3.2 million dollars required. The chart below reflects the initial cost of the bond, the earlier sale of portions of the bond value, and the final liquidation of the bond for a loss of $914,432.92. The far right column reflects the loss incurred on the various sales. The purchase and sale of the bond are documented in **Exhibit C**.

| Western Un Corp, 5.93% Interest Rate, 10/1/2016 Maturity Date | | | | | |
|---|---|---|---|---|---|
| **Transaction Date** | **Transaction Type** | **Transaction Amount** | **Balance** | **Funds Received** | **Gain (Loss)** |
| 7/30/2008 | Purchase | 6,945,830.33 | 6,945,830.33 | | |
| 10/7/2008 | Sold | (992,261.48) | 5,953,568.85 | 889,699.54 | (102,561.94) |
| 10/24/2008 | Sold | (1,786,070.66) | 4,167,498.19 | 1,499,001.49 | (287,069.17) |
| 12/4/2008 | Sold | (198,452.30) | 3,969,045.89 | 151,402.90 | (47,049.40) |
| 12/18/2008 | Sold | (3,969,045.89) | - | 3,054,612.97 | **(914,432.92)** |
| | | | | 5,594,716.90 | (1,351,113.43) |

12-13   **Exhibit D** is the US Return of Partnership Income Form 1065 for Vestium Equity and the K-1's reflect the profits of Veritas Investments of $310,110 and EIMT profit of $113,588. This tax return also documents the distributions paid out to EIMT for 2008. Exhibit F is an Affidavit of Robert Buckhannon ("Mr. Buckhannon"). In this Affidavit Mr. Buckhannon states that Vassallo had "agreed that any losses to be incurred by Vestium to cash out the bonds would be allocated to EIMT balance outstanding".

## Section II – Arcanum Equity

Arcanum Equity was a fund that received funds recorded as loans, which had a term of one year.

The Lender (such as EIMT) shall receive an accumulative rate of return equal to (50%) of net profits generated on a pro-rated share of the Lender's Loan amount in reference to the total cash as listed upon Arcanum's Balance sheet. If there were no profits, there was no return on an investment. This is a general description of the fund. No analysis has been made of the contracts, the representations, warranties, or covenants of the Borrower, which is Arcanum Equity. The investors signed an acknowledgement that they were an "Accredited Investor",

The chart below is a summary of the payments into Arcanum Equity, the disbursements from Arcanum Equity, and other factors which affect the final balance due EIMT and Kenitzer entities. Following the chart is an explanation of each of the line items in the chart and a reference to the source document of the transaction.

| Arcanum Equity | | | | | |
|---|---|---|---|---|---|
| Line # | Date | Sending Entity | Receiving Entity | Amount | Balance |
| 1 | 6/27/08 | EIMT Properties (Vassallo) | Arcanum | 500,000 | 500,000 |
| 2 | 6/27/08 | Kenitzer 24 | Arcanum | 330,000 | 830,000 |
| 3 | 6/27/08 | Kenitzer Family Foundation | Arcanum | 500,000 | 1,330,000 |
| 4 | 6/18/09 | Arcanum | Kenitzer 24 | (50,000) | 1,280,000 |
| | **Other Adjustments** | | | | |
| 5 | 2/9/09 | Arcanum | Philorian Racing, Ltd. | (872,306) | 407,694 |
| 6 | 2/27/09 | Arcanum | The Spirit Foundation | (100,000) | 307,694 |
| | | | **Final Balance Due** | | **307,694.20** |

<u>Line Number</u>

1-4   The amounts were confirmed through the Receiver information and corresponding Arcanum Equity information. **Exhibit E** is the Arcanum Equity Schedule A, Lender's Document that certifies the Lender and that contains the Lender's signature. EIMT Properties contains the signature of Vassallo, and Kenitzer 24 and Kenitzer Family Foundation reflect the signature of Kenitzer.

5.   **Exhibit F** is a copy of the Julius Baer Bank transaction statement which reflects the transfer of $872,305.80 to Philorian Racing Ltd. on February 9, 2009. Exhibit G is the Affidavit of Mr. Buckhannon, in which Mr. Buckhannon states that: "On February 9, 2009 Mr. Vassallo instructed and confirmed that I was to wire $872,305.80 to Phlorian Racing Ltd. The $872,305.80 was a partial redemption of the $1,330,000 investment in Arcanum by EIMT Properties, LLC, Kenitzer 24, LLC and Kenitzer Family Foundation." Exhibit H is an internet inquiry of Phlorian Racing Ltd., which is identified as a private United Kingdom company and is listed under Bookmakers. It has not been confirmed that this is the same entity, or if there is a connection with Vassallo or Kenitzer.

6.  **Exhibit F** is a copy of the Julius Baer Bank transaction statement which reflects the transfer of $100,000 to The Spirit Foundation on February 27, 2009. **Exhibit G** is the Affidavit of Mr. Buckhannon, in which Mr. Buckhannon states that: "On February 27, 2009 Mr. Vassallo instructed and confirmed that I was to wire $100,000 to The Spirit Foundation. The $100,000 was a partial redemption of the $1,330,000 investment in Arcanum by EIMT Properties, LLC, Kenitzer 24, LLC and Kenitzer Family Foundation. **Exhibit I** contains a Department of Justice press release dated May 22, 2009 that identifies Vassallo as a part of a Ponzi Scheme and links the Spirit Foundation to Vassallo and EIMT.

**Exhibit J** is the 2008 US Return of Partnership Income Form 1065 for Arcanum Equity which reflects a loss of almost $4 million dollars. The restated Arcanum internal "book" financials reflect a loss ($3,934,301.57) for the twelve (12) months ended December 31, 2008 (See **Exhibit K**). I obtained the internal "book" financial statements for the ten (10) months ended October 31, 2009 that reflect a year to date profit of $515,985.16 (See **Exhibit L**). Therefore per the contract, there would be no profits participation for the Lenders, since the accumulated Net Profits have been ($3,418,316.41). Therefore no profits have been included in this analysis and it is my understanding that Arcanum Equity has adjusted and restated the account statements to reflect that no profits should be allocated. See **Exhibit M** contains the restated account statements for (i) EIMT Properties, LLC, (ii) Kenitzer 24, LLC, and (iii) The Kenitzer Foundation.

Since the Receiver has collectively referred to Vestium Equity and Arcanum Equity as "Vestium", and has noted the interrelationship of Vassallo and Kenitzer, the balance of the money was assigned to accounts most closely aligned with Kenitzer.

### Section III – The Stewardship Group

The Stewardship Group does have money invested with Arcanum Equity. However, there is only a tenuous connection with either Vassallo or Kenitzer. The "Authorized Signatories" on the Accredited Investor Acknowledgement provided by the The Stewardship Group are Charles Hooper and Brian Denman. (See **Exhibit N**) The Schedule A – Lenders Document DB is signed by Charles Hooper and Brian Denman. (See Exhibit K) The Schedule C – Limited Trading Authorization DB is signed by Charles Hooper and Brian Denman. (See **Exhibit N**)

The Receiver is relying on the statement from Kenitzer that EIMT, Vassallo, and Kenitzer money is invested with Arcanum Equity, and the amount that is invested. It would appear that the appropriate avenue for recovery of funds would be through The Stewardship Group. A copy of an E-Mail from Charles Hooper, The Stewardship Group, dated April 3, 2009, is attached under **Exhibit O**. Excerpt from the Charles Hooper E-Mail are: "This was bewildering to say the least as you took the problems of "Ken and Anthony" and applied them to this investment and The Stewardship Group. …. It has nothing to do with Ken or Anthony…….TSG has a number of 501(C)(3) organizations that are relying on your organization honoring and keeping the contracts that were offered and

clients. That is our responsibility."

In the case of The Stewardship Group, it would appear that the Receiver is attempting to identify specific funds that have been through a long chain entities, and comingled with numerous other funds. Since Arcanum Equity can only connect certain individuals to The Stewardship Group, has no knowledge of the size and scope of The Stewardship Group operations or investments, and has no knowledge whether Vassallo, Kenitzer, or EIMT have $1, $20, or as alleged $50,000 with Arcanum Equity via The Stewardship Group. An accounting of Vassallo, Kenitzer, or EIMT invested via The Stewardship Group is impossible with the information provided by the Receiver.

## Summary

In summary, it is my opinion Vestium Equity has over paid EIMT by $42,125.98. In the case of Arcanum Equity, funds were transferred at the direction of Vassallo to Philorian Racing and The Spirit Foundation. Given the character of Vassallo and Kenitzer, and knowing the information released by the Justice Department on The Spirit Foundation, I do not have any difficulty accepting the $872,306 transferred to Philorian and $100,000 transferred to The Spirit Foundation. Given these circumstances, the amount due to the Receiver from Arcanum Equity to EIMT is $307,694.20. In total it is my opinion that The Funds owe $265,568.22 ($307,694.20 less $42,125.98 = $265,568.22)

If there are any questions, please do not hesitate to call.

Steven E. Martin
CPA, CFE, CFF, CVA, ABV

**LIST OF EXHIBITS**

| Exhibit # | Exhibit Description |
|---|---|
| A | Vestium Equity bank account #9501 at US Bank Reflecting Transfers to Veritas Investments |
| B | Vestium Equity bank account #9501 at US Bank Reflecting Transfers to EIMT |
| C | Western Union Corporation bond with an interest rate of 5.93 % and a maturity date of October 1, 2016 and related sales info |
| D | US Return of Partnership Income Form 1065 for Vestium Equity and the K-1's |
| E | Arcanum Equity Schedule A, Lender's Document |
| F | Julius Baer Bank transaction statement which reflects the transfer of $872,305.80 to Philorian Racing Ltd. on February 9, 2009 and the transfer of $100,000 to The Spirit Foundation |
| G | Affidavit of Mr. Buckhannon |
| H | Internet inquiry of Phlorian Racing Ltd |
| I | Department of Justice press release dated May 22, 2009 that identifies Vassallo as a part of a Ponzi Scheme and links the Spirit Foundation |
| J | 2008 US Return of Partnership Income Form 1065 for Arcanum Equity |
| K | AEF, LLC Balance Sheet as of December 31, 2008 and AEF, LLC Profit and Loss January through December 2008 |
| L | AEF, LLC Profit and Loss January through October 2009 |
| M | Restated Statement of Account as of August 2009 for EIMT Properties, LLC, Kenitzer 24, LLC and The Kenitzer Family Foundation |
| N | The "Authorized Signatories" on the Accredited Investor Acknowledgement provided by The Stewardship Group are Charles Hooper and Brian Denman. The Schedule A – Lenders Document DB is signed by Charles Hooper and Brian Denman. The Schedule C – Limited Trading Authorization DB is signed by Charles Hooper and Brian Denman. |
| O | E-Mail from Charles Hooper, The Stewardship Group, dated April 3, 2009 |
| P | CV of Steven E. Martin |

# EXHIBIT  A

**US bank**
Five Star Service Guaranteed

AM -242-01344-0                                                821
000   46                                              Page 4 of 5

**ACCOUNT NUMBER: 19-9501**
**VESTIUM EQUITY FUND LLC**

This statement  is for the period  from
August  1, 2008 to August  31, 2008

## TRANSACTION DETAIL (continued)

| Date Posted | Description | Principal Cash | Balance |
|---|---|---|---|



| 08/29/08 | Cash Disbursement<br>Paid To US Bank<br>Payment  Of Funds As Requested<br>Profit Distribution | - 30,834.70 | |



**us bank**
Five Star Service Guaranteed

**ACCOUNT NUMBER: 19-9501**
**VESTIUM EQUITY FUND LLC**

This statement is for the period from
September 1, 2008 to September 30, 2008

## TRANSACTION DETAIL

| Date Posted | Description | Principal Cash | Balance |
|---|---|---|---|
| ▮▮▮ | ▮▮▮ | ▮ | ▮ |
| | ▮▮▮ | | |
| ▮▮▮ | ▮▮▮ | ▮ | ▮ |
| | ▮▮▮ | | |
| ▮▮▮ | ▮▮▮ | ▮ | ▮ |
| | ▮▮▮ | | |
| ▮▮▮ | ▮▮▮ | ▮ | ▮ |
| | ▮▮▮ | | |
| ▮▮▮ | ▮▮▮ | ▮ | ▮ |
| | ▮▮▮ | | |
| ▮▮▮ | ▮▮▮ | ▮ | ▮ |
| | ▮▮▮ | | |
| ▮▮▮ | ▮▮▮ | ▮ | ▮ |
| | ▮▮▮ | | |
| ▮▮▮ | ▮▮▮ | ▮ | ▮ |
| | ▮▮▮ | | |
| 09/29/08 | Cash Disbursement<br>Paid To US Bank<br>Payment Of Funds As Requested<br>Aug 2008 Profit Distribution  - Veritas Investments | - 48,057.10 | ▮ |





AM -305-01344-0                              802
000   46                                 Page 5 of 6

**ACCOUNT NUMBER: 19-9501**
**VESTIUM EQUITY FUND LLC**

This statement is for the period from
October 1, 2008 to October 31, 2008

## TRANSACTION DETAIL (continued)

| Date Posted | Description | Principal Cash | Balance |
|---|---|---|---|
| 10/29/08 | Cash Disbursement<br>Paid To US Bank<br>Payment Of Funds As Requested<br>SEP 08 Profit Dist - Veritas Investments LLC | - 165,095.80 | |



**usbank**
Five Star Service Guaranteed

AM -366-01344-0
000  46

1098
Page 3 of 6

**ACCOUNT NUMBER: 19-9501**
**VESTIUM EQUITY FUND LLC**

This statement is for the period from
December 1, 2008 to December 31, 2008

## TRANSACTION DETAIL

| Date Posted | Description | Principal Cash | Balance |
|---|---|---|---|
| | | | |
| 12/03/08 | Cash Disbursement<br>Paid To US Bank<br>Payment Of Funds As Requested<br>Oct 2008 Profit Dist Veritas Investments LLC | - 26,012.18 | |

# EXHIBIT B

**us bank**
Five Star Service Guaranteed

AM -366-01344-0                                          1098
000   46                                        Page 3 of 6

**ACCOUNT NUMBER: 19-9501**
**VESTIUM EQUITY FUND LLC**

This statement  is for the period  from
December  1, 2008 to December  31, 2008

## TRANSACTION DETAIL

| Date Posted | Description | Principal Cash | Balance |
|---|---|---|---|
| 12/03/08 | Cash Disbursement<br>Paid To Wells Fargo Bank<br>Payment Of Funds As Requested<br>Oct 2008 Profit Dist Equity Investment  Mgmt & Trad | - 81,391.28 |  |