1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8               FOR THE EASTERN DISTRICT OF CALIFORNIA

9

SECURITIES AND EXCHANGE
10 COMMISSION,
                                    NO. CIV. S-09-0665 LKK/DAD
11          Plaintiff,

12      v.
                                       O R D E R
13 ANTHONY VASSALLO, KENNETH
   KENITZER, and EQUITY
14 INVESTMENT MANAGEMENT AND
   TRAINING, INC.,
15

16          Defendants.

17 _____/
   MICHAEL CALLAHAN and
18 MATTHEW TUCKER, parties in
   interest.
19 _____/

20      On July 31, 2009, this court appointed a permanent Receiver

21 to marshal and recover Equity Investment Management and Trading,

22 Inc. ("EIMT") assets. On August 20, 2009, this court established

23 a standard for summary proceedings for the recovery of EIMT assets

24 by the Receiver. Pursuant to this procedure, the Receiver has moved

25 for the disgorgement of $2.0 million from interested parties

26 Michael Callahan ("Callahan") and Matthew Tucker ("Tucker").

1

1  Callahan has filed both a motion to continue the hearing and an
2  opposition to the motion. Tucker has not opposed the motion.

3  **I. BACKGROUND**

4      This court appointed a Receiver to recover assets of
5  EIMT. These assets are to be distributed to the defrauded
6  investors of EIMT. Throughout the Receiver's efforts to recover
7  these assets, he discovered that EIMT consisted of several
8  subfunds. These include Veritas Investments, LLC ("Veritas"). In
9  December 2008, Veritas transferred $2.0 million to Michael
10 Callahan ("Callahan") and Matthew Tucker ("Tucker") to purchase
11 an investment called a Collateralized Mortgage Obligation
12 ("CMO"). Veritas wired Callahan $125,000 and wired Tucker $1.875
13 million for the purchase. The parties contest whether a CMO was
14 ever purchased by Callahan and Tucker. Additionally, the parties
15 contest the extent of Callahan's involvement in this
16 transaction. After numerous negotiations with Callahan to
17 recover the CMO, the Receiver filed this motion to disgorge.

18 **II. STANDARD OF REVIEW**

19     On August 20, 2009, the court issued an order establishing
20 a standard summary procedure for Receiver's recovery of EIMT's
21 assets. Doc. No. 116. This order set forth the procedure for
22 disgorgement claims for EIMT assets. First, the Receiver shall
23 file a noticed motion for disgorgement and serve said motion
24 upon all interested parties. Interested parties may file an
25 opposition brief, in response to which the Receiver may file a
26 reply brief. The order also provides that, "Upon a showing of

1  good cause, the Court may order limited discovery concerning the

2  particular asset."

3      Additionally, if "the Court determines there is a disputed

4  issue(s) of fact concerning the disgorgement of a particular

5  asset, the Court shall set an evidentiary hearing to resolve the

6  issue(s)." According to this standard, the court may only grant

7  a motion for disgorgement where material facts are in dispute if

8  the record as a whole could not lead a rational trier of fact to

9  find that the assets at issue are not held in constructive trust

10 for EIMT, or more specifically, for the receivership of EIMT

11 assets. This cannot be decided based upon whether an interested

12 party acted in good faith in its communications with the

13 Receiver.[1] When the Receiver cannot meet this burden, the court

14 shall order an evidentiary hearing to resolve any disputed

15 facts.

16                          **III. ANALYSIS**

17      **A.    Motion to Continue**

18      Callahan filed a motion to continue the Receiver's Motion

19 for Disgorgement several days after he filed an opposition to

20 Receiver's motion. Despite the unusual chronology of Callahan's

21 filings, the court will first decide his motion to continue. For

22 the reasons discussed below, the court denies the motion to

23 continue.

24 _____

25      [1] The court notes that the court may consider whether an
   interested party acted in good faith when determining whether there
26 is good cause for discovery.

3

1    Callahan moves for a 60 day continuance of the Receiver's
2    motion for disgorgement so that he can hire an attorney and
3    conduct discovery. The court is not persuaded by Callahan's
4    request for a continuance to hire an attorney.  First, Callahan
5    is an attorney; second, Callahan has been aware of the
6    Receiver's demands to remit the money he obtained for the CMO
7    since at latest July 23, 2009, Receiver's Exhibit 11; third,
8    Callahan has been aware of the investors' demands to remit the
9    money or the CMO since at latest January 2009, Declaration of
10   Bruce Davis in Support of Receiver's Reply at ¶ 2; fourth,
11   despite being a sophisticated party, with knowledge of the legal
12   claims of EIMT to the funds or the CMO for nearly a year,
13   Callahan did not retain counsel; and finally, Callahan submitted
14   an opposition to the Receiver's motion. As such, it appears to
15   the court that Callahan is merely attempting to delay
16   proceedings, and the court denies his request for a continuance
17   so that he can retain counsel.

18       Callahan also requests a continuance so that he may conduct
19   limited discovery as to the connection between EIMT and Veritas.
20   Callahan contends that he is entitled to such discovery so that
21   he and Tucker can deliver the CMO to EIMT.[2] Interested parties,
22   however, are only entitled to discovery when they can show good
23   cause for such discovery. This issue will be resolved in the
24   evidentiary hearing ordered below. As such, Callahan is not

25   ─────────────────
26       [2] At the same time, Callahan reports that Tucker is no longer
     communicating with him.

4

1   entitled to a continuance on this ground.

2        Callahan also mentions in his motion that there are

3   disputed facts. This issue will also be resolved in the

4   evidentiary hearing, and thereby does not merit a continuance.

5   Accordingly, Callahan's motion for a continuance is denied. The

6   court will rule on the motion for disgorgement at this time.[3,4]

7        **B.   Motion to Order Disgorgement of $2.0 Million**

8             **i.   Collateralized Mortgage Obligation**

9        The Receiver and Callahan agree that Veritas transferred

10  $2.0 million in December 2008. Callahan was wired $125,000,and

11  Tucker was wired $1.875 million. The money was transferred to

12  purchase a Collateralized Mortgage Obligation ("CMO"). The

13  Receiver has attempted to recover the CMO from Callahan and

14  Tucker for several months. These efforts have not been fruitful.

15  For this reason, the Receiver does not believe that the CMO was

16  ever purchased, and now seeks disgorgement of the money

17  transferred for the purported purchase of the CMO. Callahan,

18  however, contends that the CMO was purchased, and may be

19  delivered to the Receiver. This constitutes a material dispute

20  of fact, which is dispositive as to whether the $2.0 million

21  should be disgorged from Callahan and accordingly, the court

22  _____

23       [3] The Court will consider Callahan's opposition as if timely
     filed.
24

25       [4] Callahan also alludes to due process concerns in his motion.
     The Receiver interprets this as a claim challenging the summary
     proceeding. If it is such a challenge, Callahan's concerns will be
26   resolved through the order for an evidentiary hearing.

1  orders an evidentiary hearing as to that issue.

2          **ii.  Joint and Several Liability**

3      If the trier of fact concludes either that the CMO does not

4  exist or that a CMO exists, yet is not legitimate, the

5  transaction would appear to be fraudulent. The elements of a

6  claim for intentional misrepresentation under California law are

7  (1) misrepresentation (a false representation, concealment or

8  nondisclosure), (2) knowledge of falsity, (3) intent to defraud

9  (to induce reliance), (4) justifiable reliance, and (5)

10  resulting damage. <u>Agosta v. Astor</u>, 120 Cal. App. 4th 596, 603

11  (2004). If the CMO was never purchased, there appears to be no

12  question as to whether EIMT, through its subfund Veritas,

13  experienced damage as a result of the statements that the CMO

14  was purchased with its assets and Callahan has not argued that

15  EIMT did not justifiably rely upon such statements. Moreover, it

16  seems apparent that knowingly false statements were made to EIMT

17  with the intent to defraud it of $2.0 million if the CMO does

18  not exist or is not legitimate.

19      A question that remains is what Callahan's involvement was

20  in this transaction. It is undisputed that Callahan sent an

21  email to EIMT which demonstrated his involvement in the asserted

22  multi-stage process of purchasing the CMO. However, it appears

23  to the court that Callahan argues that he was not aware of the

24  falsity of the statements he made concerning the purchase of the

25  CMO and that he lacked the intent to defraud EIMT. The Receiver,

26  as should be obvious, contends that Callahan was aware of the

1  falsity of his statements and that he intended to defraud EIMT.

2  This constitutes a disputed fact, which is determinative as to

3  whether Callahan is a joint tortfeasor and, thereby, should be

4  held jointly and severally liable for the entire $2.0 million.

5  See Expressions at Rancho Niquel Assoc. V. Ahmanson

6  Developments, Inc., 86 Cal. App. 4th 1135, 1139 (Cal. Ct. App.

7  2001) ("Where multiple tortfeasors are responsible for an

8  indivisible injury suffered by the plaintiff, each tortfeasor is

9  jointly and severally liable to the plaintiff for those damages

10 and thus may be held individually liable to the injured

11 plaintiff for the entirety of such damages."). Consequently, the

12 court orders an evidentiary hearing to determine whether

13 Callahan knew that the statements he made to EIMT concerning the

14 purchase of the CMO were false and whether Callahan intended to

15 defraud EIMT if it is shown that the CMO was never purchased

16 and/or illegitimate.

17     Callahan also claims that he was only a facilitator in

18 introducing Veritas and Tucker.  As such, he claims to be

19 limited to return of the $125,000.  That, too, is to be heard at

20 the evidentiary hearing.

21                        **IV. CONCLUSION**

22     For the foregoing reasons, the court orders that Callahan's

23 motion for a continuance is DENIED.

24     The court orders Tucker to disgorge $2.0 million received

25 from Veritas.  The court further orders that the evidentiary

26 hearing is referred to Magistrate Judge Dale A. Drozd pursuant

7

1    to Local Rule 302(a). Judge Drozd will confer with Callahan,

2    Arcanum Equity Fund, LLC, Vestium Equity Fund, LLC, and Vestium

3    Management Group, LLC,[5] the Receiver, and set a date and time

4    for the hearing or hearings as well as entertain any motions

5    demonstrating good cause to conduct limited discovery.

6         IT IS SO ORDERED.

7         DATED:  December 11, 2009.

8

9

10   LAWRENCE K. KARLTON
     SENIOR JUDGE
11   UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21
_____

22   [5] The court is also ordering an evidentiary hearing on the
     motion to order disgorgement of funds from Arcanum/Vestium, Doc.
23   No. 164. Arcanum Equity Fund, LLC, Vestium Equity Fund, LLC, and
     Vestium Management Group, LLC opposed this motion. As here, the
24   court cannot resolve the motion without an evidentiary hearing. The
     transactions at issue in Vestium/Arcanum are somewhat related to
25   those at issue here. For these reasons, Judge Drozd shall confer
     with parties for both motions and determine at his discretion
26   whether to hold separate or combined evidentiary hearings.