FUTTERMAN DUPREE DODD CROLEY MAIER LLP
JAMIE L. DUPREE (158105)
JAIME G. TOUCHSTONE (233187)
180 Sansome Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
jdupree@fddcm.com
jtouchstone@fddcm.com

*Attorneys for Receiver*
Stephen E. Anderson

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff*<br><br>v.<br><br>ANTHONY VASSALLO, et al,<br><br>*Defendants*. | Case No. CV 09-000665 LKK-DAD<br><br>**DECLARATION OF STEPHEN E. ANDERSON IN SUPPORT OF MOTION TO ORDER DISGORGEMENT OF $2,500,000 TRANSFERRED TO J.R. TRUST, GLOBAL MERGERS & ACQUISITIONS, INC., WILLIAM A. HAYWARD, RAAR INVESTMENTS, LTD., JACK MILLER AND RICHARD J. SCHOTTS, JR.**<br><br>Date: August 29, 2011<br>Time: 10:00 a.m.<br>Location: Courtroom 4, 15th Floor<br>Judge: Hon. Lawrence K. Karlton |

I, Stephen E. Anderson, declare as follows:

1. I was appointed Receiver of defendant Equity Investment Management and Trading, Inc. ("EIMT") by Orders of this Court dated April 30, 2009, and July 31, 2009, and have operated in that capacity since my appointment. I make this declaration in support of Receiver's motion to order disgorgement of $2.5 million transferred to J.R. Trust, Global Mergers & Acquisitions, Inc. ("Global Mergers"), William A. Hayward ("Hayward"), Richard Schotts, Jr. ("Schotts"), RAAR Investments, Ltd. ("RAAR") and Jack Miller ("Miller") (collectively, "Respondents"). I have personal knowledge of the facts stated herein, and, if called

1

FUTTERMAN DUPREE DODD CROLEY MAIER LLP

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

as a witness, could and would competently testify thereto, except those facts stated on information and belief, of which I am informed and believe to be true.

2.  Since my appointment, I have investigated the activities of EIMT and I have attempted to identify and recover assets purchased using EIMT investor funds. I have reviewed EIMT documents and records, interviewed many investors and other witnesses, and met with government enforcement agencies, including Plaintiff Securities and Exchange Commission, the Federal Bureau of Investigation, the United States Attorney's Office, and the Internal Revenue Service on numerous occasions. I have also reviewed documents provided by those government enforcement agencies concerning the activities of EIMT.

3.  My investigation has confirmed that the head of EIMT was Defendant Anthony Vassallo ("Vassallo"). EIMT solicited investors for a "hedge fund" program. I am informed and believe the following: Vassallo told potential investors that he had created a computer software program that could predict movements in leading stock market indexes, such as the Russell 2000 (an index based on the 2000 leading public-traded companies). Based on the software's predictions, Vassallo reported that EIMT could buy and sell stock options and make approximately 3.5% a month on the money invested based on the software's predictions. Vassallo informed investors that EIMT conducted its trading activity through the TradeStation Securities, Inc. ("TradeStation") brokerage.

4.  My investigation has revealed that EIMT investors were grouped into blocks and identified EIMT "subfunds" or, more recently "funds." There were between 22 to 26 subfunds depending on how they were categorized and the size of each subfund varied from a few investors to up to 50 investors. Each subfund had a name, such as "Veritas" or "Matrix Investment Group." EIMT's banking records demonstrate that EIMT received monies from the subfunds and transferred monies to the subfunds in a complicated web of transactions.

5.  My investigation has revealed that in the early years of EIMT, Vassallo made actual investments and trades through various trading accounts with various trading facilities, which I have been able to confirm through my review of trading records. By mid-2007, however, Vassallo had almost completely stopped trading in securities although he reported "returns" and

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

2

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

"profits" to EIMT investors. Vassallo started "investing" in more exotic investments than available through brokerage houses. I am informed and believe that in some instances, Vassallo showed investors "screen shots" purporting to represent investment balances at TradeStation. I am further informed and believe that the reported "returns" and "profits" were entirely fictional and Vassallo has not had an active trading account at TradeStation since 2007. EIMT was operated as a Ponzi-scheme, that is monies from one investor were used to pay false "returns" to other investors to lull them into keeping their money with EIMT or to induce other investors to place funds with EIMT.

6. Since my appointment, I have attempted to identify assets purchased with EIMT investor funds in an effort to recover those funds for the defrauded investors. During the course of my investigation, I determined that $2,500,000 of investor money was transferred to J.R. Trust in August 2008 under the guise of a "prime bank securities" transaction.

7. The details are somewhat unclear due to my lack of information, however, my investigation uncovered that together, Hayward on behalf of Global Mergers and Schotts on behalf of J.R. Trust, sold Vassallo on a "securities deal" through which EIMT was supposed to "share in the distribution of trade profits derived from a Private Placement Trade Program," participation in which was allegedly secured by "a line of credit drawn against a Medium Term Note" valued at $500 million. I am in possession of a "Transaction Agreement" between EIMT and Global Mergers, dated August 11, 2008, signed by Vassallo on one hand, and Hayward (as Chief Executive Officer) on the other. The Federal Bureau of Investigation seized the computer used by Vassallo at EIMT's Folsom offices, but I have been provided a copy of its hard drive. Attached hereto as Exhibit 1, is a true and correct copy of the August 11, 2008 Transaction Agreement that was located on Vassallo's hard drive. I am also in possession of a "Fiduciary Agreement," dated July 18, 2008, naming J.R. Trust as a fiduciary over the $2.5 million transferred to it by EIMT. Schotts signed the Fiduciary Agreement as the First Trustee for J.R. Trust. Attached hereto as Exhibit 2, is a true and correct copy of the Fiduciary Agreement which was also located on Vassallo's hard drive.

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

3

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

8. The terms of the Transaction and Fiduciary Agreements (collectively "Agreements") required EIMT to wire $2.5 million to Wells Fargo Bank Account Number XXXXX2269 ("J.R. Trust Account") for the benefit of J.R. Trust. J.R. Trust was to hold the funds "in the account in trust" and then forward the funds to the Floris Bank to be used for "depository/custodial fees." My investigation revealed that the Floris Bank operates out of the United Kingdom and is listed on the U.K. Financial Services Authority's list of unauthorized internet banks. In 2009, Floris Bank was reportedly involved in a fake bond investigation by the Italian finance police.

9. The Agreements detail the same Taxpayer Identification Number, Wells Fargo Bank account number, Wells Fargo Wire Routing Transit Number, "Mailing Address," and "Trust Address" for J.R. Trust. The Agreements reflect that J.R. Trust has mailing addresses located in Redondo Beach, California and Las Vegas, Nevada. Based on my investigation, I also believe that J.R. Trust operates out of and/or has a bank account located in Nassau, Bahamas. The Agreements also detail the same "Medium Term Note" described as follows:

> Interest Coupon 3,125% BAYERISCHE LBK GZ06-2009
> Common Code: 000024430081ISIN
> Code: XS0244300819
> Face Value: EURO $500,000,000.00 (Five Hundred Million)
> Data System: Clearstream Screen

10. On August 12, 2008, just one day after executing the Transaction Agreement, Vassallo wired $2.5 million from EIMT's Wells Fargo Bank account number XXXXXX6681 to the J.R. Trust Account. Attached hereto as Exhibit 3, is a true and correct copy of pertinent portions of EIMT's Wells Fargo Bank account statement for August 2008 and the accompanying wire receipt reflecting the $2.5 million transfer to J.R. Trust. The Trustees of the J.R. Trust Account are Schotts, Andrea R. Schotts, Ryan A. Schotts and Aram J. Schotts. Attached hereto as Exhibit 4, is a true and correct copy of the account holder information for the J.R. Trust Account. The balance of the J.R. Trust Account just prior to the $2.5 million deposit was $49.37. By October 27, 2008, the EIMT funds were gone from the J.R. Trust Account and the account balance was $216.15. In short, the vast majority of the EIMT funds deposited in the J.R. Trust Account on August 12, 2008, was transferred out of that account within two months of its

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

4

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

1  deposit and during the time period in question, the account appears to have been used only for
2  the receipt and disbursement of funds received from EIMT. The transaction history of the J.R.
3  Trust Account is detailed in pertinent part below:

4

| Date | Deposit/Withdrawal Amount | Type of Transaction |
|---|---|---|
| Aug. 12, 2008 | + 2,500,000.00 | EIMT deposit |
| Aug. 13, 2008 | - 80,000.00 | Wire Transfer to Bradshaw |
| Aug. 13, 2008 | - 40,000.00 | Check No. 2120 issued to/cashed by RAAR |
| Aug. 13, 2008 | -40,000.00 | Check No. 2121 issued to/cashed by Miller |
| Aug. 19, 2008 | - 1,835,000.00 | Wire Transfer to SGM Foreign Exchange Ltd. |
| Aug. 19, 2008 | -11,000.00 | Wire Transfer to SGM Foreign Exchange Ltd. |
| Aug. 26, 2008 | -33,000.00 | Wire Transfer to SGM Foreign Exchange Ltd. |
| Aug. 27, 2008 | -20,000.00 | Check No. 2124 issued to/cashed by Miller |
| Aug. 27, 2008 | -22,000.00 | Check No. 2125 issued to/cashed by RAAR |
| Aug. 27, 2008 | -17,938.40 | Cash withdrawal made in branch store |
| Aug. 27, 2008 | -60,000.00 | Wire Transfer to HSBC Bank Peru fbo Bradshaw |
| Aug. 28, 2008 | +60,000.00 | Wire Transfer from HSBC/Bank Peru fbo Bradshaw |
| Sept. 2, 2008 | -60,000.00 | Wire Transfer to HSBC Bank fbo Bradshaw |
| Sept. 3, 2008 | -15,000.00 | Cash withdrawal made in branch store |
| Sept. 15, 2008 | -16,326.99 | Wire Transfer to HSBC Bank fbo Bradshaw |
| Sept. 25, 2008 | -40,000.00 | Check No. 2132 issued to/cashed by Miller |
| Sept. 25, 2008 | -16,022.50 | Wire Transfer to HSBC Bank fbo Bradshaw |
| Sept. 26, 2008 | -90,000.00 | Check No. 2136 issued to/cashed by RAAR |
| Sept. 26, 2008 | -27,000.00 | Check No. 2137 issued to/cashed by RAAR |
| Oct. 6, 2008 | +117,000.00 | Deposit from RAAR (two checks) |
| Oct. 16, 2008 | -210,000.00 | Check No. 2138 issued to/cashed by RAAR |

23  For ease of reference, I have omitted transactions of less than $10,000 from this chart. A
24  complete and detailed transaction history for the J.R. Trust Account is set forth in relevant
25  portions of the Wells Fargo account statements for the months of August, September and
26  October 2008, true and correct copies of which are attached hereto as Exhibits 5, 6 and 7
27  respectively. J.R. Trust disbursed the remaining EIMT funds in nominal amounts to various
28  persons and/or bank accounts via wire transfers, checks and/or cash withdrawals. Attached

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

5

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

hereto as Exhibit 8, are true and correct copies of relevant checks and/or withdrawal slips written from the J.R. Trust Account.

11.   As detailed above, in August 2008, at Schotts' direction, J.R. Trust transferred $1,879,000.00 to an SGM-Foreign Exchange Limited account in the United Kingdom via HSBC Bank. Attached hereto as Exhibit 9 are true and correct copies of the wire transfer receipts evidencing that in August 2008, Schotts directed three separate wires of funds totaling $1,879,000.00 from the J.R. Trust Account, to an SGM-Foreign Exchange Limited account. I have been unable to determine the signatories on and/or ultimate purpose of this account. I have not recovered any trading statements or promissory notes that would indicate that this money was transferred to SGM-Foreign Exchange for the purpose of initiating legitimate trading activity or that the funds remain on account for EIMT.

12.   During the two month period following EIMT's transfer of the $2.5 million to J.R. Trust, RAAR received at least $228,387.50 of EIMT money. RAAR's Wells Fargo Bank account number XXXXXX1611 ("RAAR Commercial Checking Account") was opened on September 3, 2008, and lists Schotts and Miller as signatories with a "Statement Mailing Address" of P.O. Box 3476, Redondo Beach, California 90277. Attached hereto as Exhibit 10, is a true and correct copy of the account holder information for the RAAR Commercial Checking Account. During September 2008, following the opening of the RAAR Commercial Checking Account, $105,000 was deposited into the account from the J.R. Trust Account. In October 2008, another $210,000 was deposited into the RAAR Commercial Checking Account via a check written from the J.R. Trust Account. On October 6, 2008, RAAR transferred $117,000 of those funds back to J.R. Trust. From October 2008 through the closing of the account in January 2010, only nominal amounts were deposited. At the time the RAAR Commercial Checking Account was closed, it had a negative balance of $37.71. The transaction history for the RAAR Commercial Checking Account is detailed in pertinent part below:

///

///

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

6

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

| Date | Deposit/Withdrawal Amount | Action |
|---|---|---|
| Sept. 3, 2008 | +15,000.00 | Check drawn from J.R. Trust Account is deposited |
| Sept. 15, 2008 | -$15,000.00 | Check paid to Miller |
| Sept. 26, 2008 | +90,000.00 | Check drawn from J.R. Trust Account is deposited |
| Oct. 7, 2008 | -90,000.00 | Check Paid to J.R. Trust |
| Oct. 15, 2008 | +210,000.00 | Check drawn from J.R. Trust Account is deposited |
| Oct. 16, 2008 | -40,000.00 | Check Paid to Miller |
| Oct. 16, 2008 | -100,000.00 | Wire Transfer to First Caribbean International Bank fbo RAAR Investments |
| Oct. 20, 2008 | -5,000.00 | Wire Transfer to First Caribbean International Bank fbo RAAR Investments |
| Oct. 23, 2008 | -10,000.00 | Check Paid to Miller |
| Nov. 12, 2008 | -30,000.00 | Wire Transfer to Liechtensteinische Land Bank fbo Asset Logic Limited |

For ease of reference, I have omitted transactions of less than $5,000 from this chart. A complete and detailed transaction history for the RAAR Commercial Checking Account is set forth in pertinent portions of the Wells Fargo account statements for the months of August 2008 through June 2009 and September 2009 through January 2010, true and correct copies of which are attached hereto as Exhibit 11. Wells Fargo Bank inadvertently did not provide me with RAAR Commercial Checking Account Statements for July and August 2009. If necessary, I can provide these documents to the Court on reply.

13. RAAR's Wells Fargo Bank account number XXXXXX9438 ("RAAR Low Activity Checking Account") lists Schotts as its signatory with an address of 503 S. Gertruda Avenue, Redondo Beach, California 90277. Attached hereto as Exhibit 12, is a true and correct copy of the account holder information for the RAAR Low Activity Checking Account. On August 25, 2008, the RAAR Low Activity Checking Account had a negative balance of $6.72. On September 26, 2008, $27,000 was deposited into the Account via a check written from the J.R. Trust Account. On October 7, 2008, a check in the amount of $27,000 was paid from the RAAR Low Activity Checking Account back to J.R. Trust. The RAAR Low Activity Checking Account had a balance of $27.28 on October 24, 2008 and was closed on November 17, 2008. I have been unable to discern any legitimate reason for the transfer and subsequent return of EIMT

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

7

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

funds to RAAR.  Attached hereto as Exhibit 13, is a true and correct copy of relevant portions of the Wells Fargo account statements for the RAAR Low Activity Checking Account for the months of August, September, October and November 2008.

14. Miller's Wells Fargo Money Market Savings Account Number XXX-XXX9327 ("Miller Account") reflects at least seven transfers from the J.R. Trust Account and the RAAR Commercial Checking Account amounting to deposits of at least $167,317.01 of EIMT investor funds during the time period in question.  Attached hereto as Exhibit 14, is a true and correct copy of the account holder information for the Miller Account.  Upon a review of the Miller Account statements, it appears that the account was Miller and his wife Susan's primary account from which they withdrew funds to pay for living and travel expenses.  I have been unable to discern any legitimate reason for the transfer of EIMT funds to Miller.  Attached hereto as Exhibit 15 is a true and correct copy of relevant portions of the Wells Fargo account statements for the Miller Account for the months of August, September, October and November 2008 reflecting deposits from J.R. Trust and RAAR.

15. At least $172,000 of EIMT investor funds were transferred to Michael Bradshaw who is also listed as a manager and/or managing member of RAAR.  Despite my best efforts, I have been unable to locate Mr. Bradshaw.  I have thus far been unable to recover any documentation or information concerning Bradshaw's use of the $172,000 in EIMT funds transferred to him from J.R. Trust or documentation and information evidencing that the transfer of EIMT funds to Bradshaw was for a legitimate purpose.

16. During the course of his investigation, I contacted Hayward by telephone on several occasions to inquire as to the $2.5 million that was transferred by EIMT to J.R. Trust.  When we spoke, Hayward would not provide me with any information, claiming that he never received any of the money and so was not responsible for its loss and/or return.

17. I also contacted Schotts by telephone and requested that he return the $2.5 million.  In response, on May 11, 2011, Schotts copied me on an e-mail addressed to Dr. Hans Tranholm ("Tranholm"), in which he claimed that the $2.5 million was transferred as part of a legitimate lease of a "Floris Bank instrument."  Attached hereto as Exhibit 16, is a copy of an e-mail

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

8

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

Schotts provided to me that purports to be a May 11, 2011 e-mail from Schotts to Tranholm. On May 20, 2011, I mailed a letter to Schotts requesting information and/or documentation confirming that the transaction was legitimate. Attached hereto as Exhibit 17, is a true and correct copy of my May 20, 2011 letter to Schotts. On May 27, 2011, Schotts responded to my demand in writing, stating: "J.R. Trust never had any agreement with EIMT or Global Mergers and Acquisitions, Inc. . . . J.R. Trust did have an agreement with a different firm and did act accordingly based on that agreement." Attached hereto as Exhibit 18, is a true and correct copy of Schotts' May 27, 2011 letter. Schotts also produced some documents in response to my request. The documents provided to me implied that the Medium Term Note was supposed to be assigned by the Floris Bank to Tranholm, a Danish man affiliated with the "Legal and Political Science Consultance" based in Latvia who would then initiate the "Trade Program." The documents provided do not contain any information (notably, no account statements or promissory notes) that would indicate that the $2.5 million was related to any legitimate investment activity. On June 7, 2011, I mailed a second letter to Schotts reiterating my request for information and/or documentation confirming that the transaction was legitimate. Attached hereto as Exhibit 19 is a true and correct copy of my June 7, 2011 letter to Schotts.

18.   I believe this deal sounds convoluted and far-fetched because it was fraudulent. My investigation did not reveal trading account statements, records or any other indication that the Agreements and/or the transfer of $2.5 million to J.R. Trust was part of a legitimate investment. Nor did I discover any evidence that EIMT received any benefit for its $2.5 million investment. In my experience, fraudulent transactions frequently involve seemingly technical financial information and language, references to "exclusive" trading platforms and the "prestigious" foreign banks or facilitators to mask a fraud. Many of the terms contained in the documents provided uncovered by my investigation are similar to "buzz" words used in other fraudulent transactions involving EIMT that I have investigated, such as the fraudulent CMO transaction.

19.   Accordingly, I now bring this motion seeking an order of disgorgement of the $2.5 million against Global Mergers, Hayward, J.R. Trust and Schotts, jointly and severally, anything

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

9

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD

1 | purchased with that $2.5 million, any profits and for a full accounting. I also seek the
2 | disgorgement of at least $228,387.50 transferred to RAAR and at least $167,317.01 transferred to
3 | Miller, which should be offset from sums received from Global Mergers, Hayward, J.R. Trust
4 | and Schotts.

5 |     I declare under penalty of perjury under the laws of the United States of America and the
6 | State of California that the foregoing is true and correct.

7 | Dated: July 28, 2011        By:  /s/ Stephen E. Anderson
                                           Stephen E. Anderson

8 |     I hereby attest that I have on file all holograph signatures for any signatures indicated by a
9 | "conformed" signature (/s/) within this efiled document.

                                     /s/ Jamie L. Dupree
                                     Jamie L. Dupree
                                   Attorneys for Receiver Stephen E. Anderson

FUTTERMAN DUPREE DODD CROLEY MAIER LLP

10

DEC. OF STEPHEN E. ANDERSON IN SUPPORT OF RECEIVER'S MOTION TO DISGORGE $2.5 MILLION FROM J.R. TRUST
CASE NO. CV 09-000665 LKK-DAD