UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

                              NO. CIV. S-09-0665 LKK/DAD

        Plaintiff,

    v.

                             O R D E R

ANTHONY VASSALLO, KENNETH
KENITZER, and EQUITY
INVESTMENT MANAGEMENT AND
TRAINING, INC.,

        Defendants.

_____/

    The Receiver in this SEC[1] enforcement action has moved for the disgorgement of $2.5 million from non-parties J.R. Trust, Global Mergers & Acquisitions, Inc., William A. Hayward, RAAR Investments, Ltd., Jack Miller and Richard J. Schotts, Jr. (collectively, "the non-parties"). The Receiver alleges that $2.5 million in investor funds were transferred, without consideration, from Equity Investment Management and Trading, Inc. ("EIMT"), to J.R. Trust and

---

    [1] Securities & Exchange Commission.

1

1  from there, to other non-parties.   None of the non-parties has

2  appeared or opposed the motion.

**SUMMARY**

3

4      1.   The Receiver has made a *prima facie* showing that J.R.

5  Trust, RAAR Investments, Jack Miller and Richard J. Schott, Jr.,

6  each received or controlled defrauded investor funds, and that

7  none of the four had any legitimate claim to the money.   The

8  Ninth Circuit authorizes summary proceedings to recover

9  defrauded investor funds in this way.   See <u>SEC v. Wencke</u>, 783

10  F.2d 829 (9th Cir. 1986) (Wencke III)[2] (authorizing summary

11  proceedings instituted by receiver), <u>cert. denied sub nom.</u>

12  <u>DeLusignan v. Gould</u>, 479 U.S. 818 (1986); <u>SEC v. Colello</u>, 139

13  F.3d 674 (9th Cir. 1998) (authorizing SEC recovery of defrauded

14  investor funds from non-culpable "nominal defendants").

15  Accordingly, the Receiver's motion is **GRANTED** as to these four

16  non-parties.

17      2.   However, the Receiver has not alleged, nor made a *prima*

18  *facie* showing, that Global Mergers & Acquisitions, Inc. or

19  William A. Hayward ever received or controlled any investor

20  funds.   Rather, the Receiver alleges that these two (with

21  Schott), "swindled" Vassallo and EIMT out of the $2.5 million.

22  The remedy of disgorgement only applies to avoid unjust

23  enrichment, and can only be imposed on a person who has, at

24  least at some point, possessed or controlled the funds to be

25  _____

26      [2] There are three <u>Wencke</u>'s (so far).   The cited case is the
    third in the series.

2

1  disgorged.  Accordingly, the Receiver's motion is **DENIED WITHOUT**

2  **PREJUDICE** as to these two non-parties.

3                          **I. BACKGROUND**

4      According to the complaint, EIMT was a company operated by

5  defendants Anthony Vassallo and Kenneth Kenitzer.[3]  The company

6  collected $40 million from investors, who were told they were

7  investing in a "hedge fund."  The company did some securities

8  trading for a time, but ultimately stopped trading entirely.  In

9  an all-too-familiar story, the company nevertheless reported

10 fictional "returns" to its investors.  Like any "Ponzi scheme,"

11 the company's pay-outs to investors came from other investors'

12 money, not from investment returns.

13     At some point, William A. Hayward (on behalf of Global

14 Mergers & Acquisitions, Inc.), and Richard J. Schotts, Jr. (on

15 behalf of J.R. Trust), "convinced Vassallo to transfer

16 $2.5 million" of EIMT funds – the money the Receiver now seeks

17 to recover – to J.R. Trust.  Vassallo transferred the funds,

18 apparently believing that he was investing in a "Private

19 Placement Trade Program," but which turned out to be just

20 another investment scam.[4]  Upon receiving EITM's funds, J.R.

21 Trust at Schotts's direction, spent the money, or transferred it

22

23     [3] Vassallo and Kenitzer have both consented to permanent
       "obey-the-law" injunctions (Dkt. Nos. 127 & 228), in which they
24     "neither admit nor deny" the allegations of the complaint, from
       which the following account is taken.

25     [4] The Receiver refers to it as a "Prime Bank" securities scam.
       It is unclear if defendant Vassallo was himself the victim of a
26     scam, or if he was a party to it.

                                3

1  to RAAR, Miller and others,[5] none of whom had any right to
2  EIMT's funds.   EIMT got nothing for the $2.5 million
3  transferred to the non-parties.   On March 11, 2009, the SEC
4  filed this civil enforcement action against Vassallo, Kenitzer
5  and EIMT, alleging sales of unregistered securities, securities
6  fraud, and other charges.

7      On July 31, 2009, this court appointed a permanent Receiver
8  for EIMT, to marshal and recover its assets, namely, the
9  defrauded investor funds.  See SEC v. Wencke, 577 F.2d 619, 623
10 (9th Cir. 1978) (Wenke I) (district court acted within its
11 discretion in appointing a receiver to protect the public
12 investors); 15 U.S.C. § 78u(d)(5) (authoring the district court
13 to grant equitable relief necessary for the benefit of
14 investors); 28 U.S.C. § 754 (governing the appointment of
15 receivers in federal courts).

16     On July 28, 2011, the Receiver filed this motion seeking
17 disgorgement of the $2.5 million that was initially transferred
18 to J.R. Trust.  The motion is supported by declarations showing
19 what happened to the $2.5 million, and the role of the non-
20 parties.  It is also supported by the Receiver's Certificate of
21 Service averring that each of the non-parties had been served
22 with the motion and its accompanying papers.  To date, none of
23 the non-parties has appeared or otherwise opposed the motion.
24 ////

25 

26     [5] The Receiver could not locate some of the transferees, and
    they are not involved in this motion.

4

1              **II. DISGORGEMENT: AUTHORITY AND STANDARD**

2          "[T]he district court has broad equity powers to order the

3    disgorgement of 'ill-gotten gains' obtained through the

4    violation of federal securities laws." S.E.C. v. JT Wallenbrock

5    & Associates, 440 F.3d 1109, 1113-14 (9th Cir. 2006).[6]  These

6    powers come expressly from the federal securities laws, 15

7    U.S.C. § 78u(d)(5) (district court may grant "any equitable

8    relief that may be appropriate or necessary for the benefit of

9    investors"), but more generally, from "common law principles of

10   equity."  See FTC v. Network Services Depot, Inc., 617 F.3d

11   1127, 1141-1142 (9th Cir. 2010).

12         In the Ninth Circuit, this equity power extends to non-

13   parties, often called "nominal defendants," who are "in

14   possession of funds to which they have no rightful claim, such

15   as money that has been fraudulently transferred by the defendant

16   in the underlying securities enforcement action." SEC v. Ross,

17   504 F.3d 1130, 1141 (9th Cir. 2007).[7]

18   ────────────────────

19         [6] Citing SEC v. First Pacific Bancorp, 142 F.3d 1186, 1191
     (9th Cir. 1998), cert. denied, 525 U.S. 1121 (1999).
20
         [7] Citing SEC v. Colello, 139 F.3d 674, 675 (9th Cir. 1998)
21   (SEC may sue "nominal defendants"). Ross also helpfully cites "SEC
     v. Hickey, 322 F.3d 1123, 1130-32 (9th Cir. 2003) (upholding the
22   district court's exercise of jurisdiction over a corporation
     nominally owned by the defendant's mother and into which the
23   defendant had channeled proceeds of his securities law violations);
     Wencke III, 783 F.2d 829, 838 (9th Cir. 1986) (holding that the
24   district court had jurisdiction over the assets of a corporation
     into which the defendant in the underlying enforcement action had
25   funneled proceeds of his securities law violations)," and SEC v.
     Cherif, 933 F.2d 403, 414 (7th Cir. 1991) (discussing "nominal
26   defendants").

                                    5

1    A disgorgement order will issue against a non-party "if it
2  is established that the non-party possesses illegally obtained
3  profits but has no legitimate claim to them."  SEC v. Ross, 504
4  F.3d 1130, 1144 (9th Cir. 2007) (citation and internal
5  quotations omitted).[8]  Although the federal securities laws
6  expressly provide for whatever "equitable remedy" is needed to
7  benefit the defrauded investors, the Ninth Circuit looks to the
8  principles of the common law in determining whether disgorgement
9  is appropriate.  See FTC v. Network Services Depot, Inc., 617
10  F.3d at 1141-1142.  The remedy applicable in these cases is the
11  "constructive trust":

12       Constructive trust is a form of remedy that is
13       "flexibly fashioned in equity to provide relief where
14       a balancing of interests in the context of a
15       particular case seems to call for it." In re N. Am.
16       Coin & Currency, Ltd., 767 F.2d 1573, 1575 (9th
17       Cir. 1985). It is a creature of the common law, rather
18       than any federal statute.
19  FTC v. Network Services Depot, Inc., 617 F.3d 1127, 1141-1142
20  (9th Cir. 2010).  As applicable to these cases,
21       At common law, where property has been obtained by fraud, a
22       court in equity "has jurisdiction to reach the property
23

24       [8] In Ross, the Ninth Circuit found that summary proceedings
   were not proper because the sole basis for the disgorgement was the
25  wrong-doing of the non-parties.  504 F.3d at 1144 (the purpose of
   summary proceedings is "simply to 'obtain equitable relief from a
26  non-party against whom no wrongdoing is alleged'").

1       either in the hands of the original wrong-doer, or in the

2       hands of any subsequent holder" and to convey that property

3       to "the one who is truly and equitably entitled to the

4       same." <u>Harris Trust & Sav. Bank v. Salomon Smith Barney,</u>

5       <u>Inc.</u>, 530 U.S. 238, 251 (2000).

6  <u>Id.</u>, 617 F.3d at 1141-1142.

7     The non-parties have not appeared or responded to the

8  motion for disgorgement.  Accordingly, as in a default judgment

9  situation, it will be sufficient for the Receiver to make a

10  *prima facie* showing of his entitlement to the disgorgement: that

11  defendants committed a securities law violation; that defrauded

12  investor funds from that violation were transferred to the non-

13  parties; and that the non-parties have no legitimate claim to

14  the funds.

15                  **III. SUMMARY PROCEEDINGS**

16     The Ninth Circuit has recognized "a truncated form of

17  process vis-a-vis 'a non-party depository as a nominal defendant

18  to effect full relief in the marshaling of assets that are the

19  fruit of the underlying fraud.'"  <u>Ross</u>, 504 F.3d at 1141;

20  <u>Wencke III</u>, 783 F.2d 829 (confirming the district court's

21  authority to use summary disgorgement proceedings, initiated by

22  the receiver, to marshal investor assets – namely, defrauded

23  investor funds – in hands of non-parties).  In upholding the use

24  of this type of summary proceeding, the Ninth Circuit has relied

25  on the fact that the district courts have afforded the non-party

26  from whom disgorgement is sought, substantially all of the

1  procedural and evidentiary protections that would be provided in

2  a plenary proceeding.  See CFTC v. Topworth Intern., Ltd., 205

3  F.3d 1107, 1113 (9th Cir. 1999); SEC v. Universal Financial, 760

4  F.2d 1034, 1037 (9th Cir. 1985).[9]

5      On August 20, 2009, this court established a standard for

6  summary proceedings for the recovery of EIMT assets by the

7  Receiver.  Dkt. No. 116.  First, the Receiver shall file a

8  noticed motion for disgorgement and serve said motion upon all

9  interested parties.  Interested parties may file an opposition

10 brief, in response to which the Receiver may file a reply brief.

11 The order also provides that, "Upon a showing of good cause, the

12 Court may order limited discovery concerning the particular

13 asset."  Additionally, if "the Court determines there is a

14 disputed issue(s) of fact concerning the disgorgement of a

15 particular asset, the Court shall set an evidentiary hearing to

16 resolve the issue(s)."  The court orders disgorgement of an

17 asset where the Receiver shows that the asset belongs to EIMT.

18     Accordingly, the summary proceeding order provides the due

19 process protections that the Ninth Circuit has identified as

20 important in such proceedings: notice, discovery, participation

21 in briefing and oral argument, and application of the Federal

22 Rules of Evidence and Civil Procedure.  See Wencke III, 783 F.2d

23 at 836-837.  In addition, the order provides for an evidentiary

24

25     [9] In any event, this court has already ruled on the
   sufficiency of summary proceedings, see also SEC v. Vassallo, 2010
   WL 3835729 at *2 (E.D. Cal. September 29, 2010) (Karlton, J.)
26 (unpublished) (citing Topworth), and it is now the law of the case.

1   hearing to resolve disputed issues of fact.

2   **IV. ANALYSIS**

3   **A.   Recipients of EIMT Funds**

4   The Receiver has made a *prima facie* showing that defendant

5   Vassallo solicited investors for a fraudulent securities

6   investment scheme,[10] obtained investor funds by means of these

7   solicitations and lied to the investors about their "returns,"[11]

8   all in violation of the federal securities laws as set forth in

9   the complaint. <u>See</u> Anderson Decl. ¶¶ 3-5 (Dkt. No. 417).  The

10  Receiver's evidence further shows the following: (i) Vassallo

11  transferred $2.5 million of the investors' funds to non-party

12  J.R. Trust in August 2008;[12] (ii) at Schott's direction, J.R.

13  Trust transferred $1,879,000 to an account in the United

14  Kingdom; (iii) J.R. Trust transferred $228,387.50 of those funds

15  to non-party RAAR;[13] (iv) J.R. Trust, of whom Schott was a

16  Trustee, and RAAR, for which Schott was a bank signatory,

17  transferred $167,317.01 of those funds to non-party Jack

18  ───────────────

19  [10] Even if the "hedge fund" did trade at the beginning, the
    Receiver's evidence shows that at some point there was no trading,
20  no returns, and only fraudulent representations about the
    investors' non-existent "returns."

21  [11] The Receiver views this evidence as supporting a
    constructive trust under California law.  The court has no reason
22  to doubt that it does, nor to question whether such an approach
    would be proper.  However, since this is an SEC enforcement case,
23  the court believes that it is more appropriate to examine the
    evidence in light of the federal securities laws and the law of
24  disgorgement applicable specifically to SEC enforcement cases.

25  [12] <u>See</u> Anderson Decl. ¶ 10.

26  [13] <u>See</u> Anderson Decl. ¶¶ 12-13.

1  Miller.[14]  The evidence further shows that none of the above non-
2  parties did anything to earn the funds or otherwise justify the
3  transfer of the funds to them.  See Anderson Decl. ¶¶ 6-18.

4       Accordingly, the Receiver has shown his entitlement to:
5  (i) disgorgement of the $2.5 million in defrauded investor funds
6  from J.R. Trust; (ii) disgorgement of $228,387.50 from non-party
7  RAAR; and (iii) disgorgement of $167,317.01 from non-party Jack
8  Miller.

9       **B.   Non-Recipients of EIMT Funds**

10      The Receiver also seeks disgorgement from non-parties
11 Global Mergers & Acquisitions, Inc. and William A. Hayward.
12 However, the Receiver's evidence does not make a *prima facie*
13 showing that either of these two non-parties received or
14 controlled defrauded investor funds from EIMT.  Instead, these
15 non-parties are alleged to be wrong-doers who "swindled"
16 Vassallo into transferring EIMT funds to J.R. Trust.  See
17 Anderson Decl. ¶ 7.

18      The problem for the Receiver is that whether he proceeds
19 under federal law or California law of "disgorgement" or
20 "constructive trust," the basic requirement of the remedy of
21 disgorgement is that the person against whom the order would
22 issue be, or at some point have been, in possession or control
23 of the funds to be disgorged.  There is at present no showing
24 that Global Mergers or Hayward ever possessed or controlled any

25 _____

26      [14] See Anderson Decl. ¶ 14.

1  defrauded investor funds, and accordingly, no order of

2  disgorgement can issue against them at this time.

### V. CONCLUSION

4      For the foregoing reasons:

5      (1) The Receiver's motion for disgorgement as to J.R.

6  Trust, RAAR Investments, Ltd., Jack Miller and Richard J.

7  Schott, Jr., is **GRANTED**;

8      (2) The Receiver's  motion for disgorgement as to Global

9  Mergers & Acquisitions, Inc. and William A. Hayward is **DENIED**

10 **WITHOUT PREJUDICE**.[15]

11     The court further orders that within twenty (20) days of

12 the issuance of this order:

13     (3) Non-parties J.R. Trust and Richard J. Schott, Jr. shall

14 DISGORGE to the Receiver the $2.5 million transferred to J.R.

15 Trust by defendant EIMT, including but not limited to, anything

16 purchased with that $2.5 million and any profits therefrom, but

17 subject to an offset of any amounts actually disgorged by RAAR

18 and Miller;

19     (4) Non-party RAAR Investments, Ltd. shall DISGORGE to the

20 Receiver the $228,387.50 of EIMT funds it received from J.R.

21 Trust;

22

23     [15] If the Receiver obtains evidence that Global Mergers and/or
Hayward received or controlled defrauded investor funds, he may
24 renew his motion as to them.  Otherwise, he is free to file a
motion seeking relief other than disgorgement, if he believes it
25 is appropriate for resolution in a summary proceeding.  Of course,
he is always free to file a plenary action to recover the funds he
26 alleges these two "swindled" out of Vassallo.

1        (5) Non-party Jack Miller shall DISGORGE to the Receiver

2    the $167,317.01 of EIMT funds he received from J.R. Trust and

3    RAAR; and

4        (6) J.R. Trust, RAAR, Miller and Schott shall each provide

5    a full accounting of all funds they received from EIMT or from

6    any recipient of EIMT funds.

7        IT IS SO ORDERED.

8        DATED:  August 31, 2011.

9

10

11                    LAWRENCE K. KARLTON

12                    SENIOR JUDGE
                UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

12