UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>      v.<br><br>ANTHONY VASSALLO, KENNETH KENITZER, and EQUITY INVESTMENT MANAGEMENT AND TRAINING, INC.,<br><br>            Defendants. | No. CIV. S-09-0665 LKK/DAD<br><br><br>**ORDER** |

The U.S. Securities and Exchange Commission ("SEC"), in this securities fraud enforcement action, moves for a final judgment of disgorgement for $43 million against defendant Anthony Vassallo, with pre-judgment interest, and civil penalties. ECF No. 488. For the reasons set forth below, the court will grant the motion.

**I.   BACKGROUND**

According to the SEC's complaint, ECF No. 1, from approximately May 2004 through November 2008, defendant Vassallo

1

(and Kenneth Kenitzer, who is not involved in this motion), raised over $40 million from approximately 150 investors. At some point, if not from the very beginning, the investors' funds were lost to Vassallo's "Ponzi" scheme, in which earlier investors were paid "returns" from the investments of later investors. Vassallo hid the fraud from his investors, but it eventually came to light in 2008, when investors found that they could not access their funds.

## II.   PROCEDURAL HISTORY

**A.   The Civil Case.**

On March 11, 2009, the Securities and Exchange Commission ("SEC") sued Anthony Vassallo ("Vassallo") and Equity Investment Management and Trading, Inc. ("EIMT") for securities fraud. ECF No. 1. On April 30, and July 31, 2009, the court appointed Stephen E. Anderson to be the Receiver for EIMT, and empowered him to "[t]ake all steps the receiver deems necessary to secure and protect the assets and property of EIMT." ECF No. 52.

On March 9, 2010, based upon a Consent and Stipulation between the SEC and Vassallo (ECF No. 220), the court entered the Judgment of Permanent and Other Relief Against Defendant Anthony Vassallo. ECF No. 228. The Judgment provides that "upon motion by the Commission, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or civil penalties," against Vassallo, and if so, the amounts. Id., at 4, ¶ V. The judgment also provides that in connection with the SEC's motion for disgorgement, interest and penalties, and solely for the purposes of that motion, "the allegations of the Complaint shall be accepted as and deemed true by the Court."

1   Judgment at 4 ¶ V.

2       **B.   The Criminal Case.**

3       On March 18, 2009, the United States filed a criminal
4   complaint against Vassallo, charging him with conspiracy, mail
5   fraud, wire fraud, money laundering, and securities fraud. U.S.
6   v. Vassallo, 2:9-cr-179 GEB (E.D. Cal.).[1] On April 15, 2009, the
7   Grand Jury returned an indictment against Vassallo, charging him
8   with mail fraud, wire fraud and money laundering. U.S. v.
9   Vassallo, id., ECF No. 19. On February 1, 2013, Vassallo agreed
10  to plead guilty to Count 2 of the indictment, wire fraud. ECF
11  No. 115. On September 19, 2013, the district court entered an
12  Amended Judgment against Vassallo, convicting him of wire fraud,
13  based upon his guilty plea. U.S. v. Vassallo, id., ECF No. 150.
14  The remaining parts of the indictment were dismissed. Id.

15      As part of his sentence, Vassallo was ordered to pay
16  restitution of $43 million to the defrauded investors. See id.,
17  ECF No. 150 at 5 ("The defendant must make restitution … to the
18  following payees in the amount listed below").

19      **C.   The Motion for Disgorgement.**

20      On October 4, 2013, the Receiver filed a motion for a
21  judgment of disgorgement of $43 million against Vassallo. See
22  ECF No. 479. At the hearing on the Receiver's motion, the court
23  expressed concern, and later requested briefing, about whether
24  the requested judgment of disgorgement would conflict with the

---

[1] The civil case was assigned to the undersigned, and the criminal case was assigned to Hon. Garland E. Burrell. This court declined to "relate" the cases to the same judge. ECF No. 28.

$43 million restitution order entered against Vassallo in the criminal case.  See ECF No. 485.[2]

The SEC thereupon filed this motion, seeking the same $43 million disgorgement relief previously sought by the Receiver, but in addition, seeking prejudgment interest and civil penalties.  ECF No. 488.  In light of the SEC's motion, the Receiver withdrew his own motion.  ECF No. 489.

The SEC argues that (1) disgorgement will not conflict with the criminal restitution because Vassallo will receive a set-off

---

[2] The court also requested briefing on (1) whether a summary procedure was appropriate for the Receiver's request, (2) whether there is evidence that the funds sought to be disgorged are assets of EIMT to which Vassallo has no legitimate claim (the standard for "relief" or "nominal" defendant disgorgement), and (3) whether collateral estoppel, based upon the criminal conviction for mail and wire fraud, and money laundering (not securities fraud), was appropriate in this case.

Now that the SEC is seeking the disgorgement relief, the first two of these issues no longer exist.  The SEC's motion seeks a restitution order outside of the summary procedures, and it is based upon Vassallo's role as a securities law violator (not a relief or nominal defendant).  As for the third issue (collateral estoppel), the SEC correctly points out that the basis for its assertion that Vassallo has violated the securities laws is this court's judgment of permanent injunction against Vassallo.  Under that order, when the SEC seeks disgorgement, interest and penalties, as it now does, "the allegations of the Complaint shall be accepted as and deemed true by the Court."  Judgment at 4 ¶ V.  The Complaint sufficiently alleges that Vassallo defrauded investors of "more than $40 million" through various securities law violations.  Complaint ¶¶ 1 & 13.  Accordingly, to the degree the SEC seeks disgorgement of $40 million (rather than the requested $43 million), the third issue no longer exists, either.

However, the court finds that the SEC's collateral estoppel argument has demonstrated that Vassallo's ill-gotten gains total $43 million.  Accordingly, that will be the amount of disgorgement ordered.

4

1  in the restitution based upon any disgorgement he pays, (2) this
2  court is authorized by law to order disgorgement, pre-judgment
3  interest and civil penalties, and (3) the consent judgment
4  against Vassallo contemplates that the SEC will seek disgorgement
5  and penalties.
6      Vassallo opposes the motion on the grounds that since the
7  criminal case has already granted $43 million in restitution,
8  this court should exercise its discretion by not imposing any
9  more financial remedies.  Specifically, Vassallo asserts that
10 (1) the criminal restitution order fully compensates his victims,
11 (2) he has already been sufficiently punished, and (3) the
12 judgment will go unpaid since Vassallo does not have sufficient
13 funds, thus preventing the judgment from serving its intended
14 purpose.

### III. STANDARDS

> The district court has broad equity powers to order the disgorgement of "ill-gotten gains" obtained through the violation of the securities laws.  Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable.

SEC v. First Pacific Bancorp, 142 F.3d 1186, 1191-92 (9th Cir. 1998) (citations omitted), cert. denied, 525 U.S. 1121 (1999).[3]

> "[T]he amount of disgorgement should include all gains flowing from the illegal activities."  Disgorgement need be "only a

---
[3] "Further, where two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they have been held jointly and severally liable for the disgorgement of illegally obtained proceeds." Id.

5

1
2
          reasonable approximation of profits causally connected to the violation."

SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1096 (9th Cir. 2010).

### IV.  ANALYSIS

**A.  Civil Disgorgement.**

The SEC asserts that there is no conflict between its requested $43 million civil disgorgement and the $43 criminal restitution already ordered in the criminal case. The plea agreement makes express reference to the civil case, and the fact that the receiver "has recovered some funds for investors." ECF NO. 155 at 3, ¶ II(B). Further, the plea agreement states that "[t]he parties agree that the total amount of [criminal] restitution shall be credited by the amounts disbursed by the receiver to the victims of this crime." Id. In light of this, there appears to be no encroachment on the criminal judgment, as that judgment specifically contemplates an overlapping civil disgorgement order, and the disbursement of disgorged funds to investors.

The SEC cites no Ninth Circuit cases addressing this issue, and the court's own research revealed none. However in SEC v. Palmisano, 135 F.3d 860 (2nd Cir.), cert. denied, 525 U.S. 1023 (1998), the Second Circuit reviewed a case that involved a similarly overlapping disgorgement order, after a criminal restitution order had already been entered. After determining that there was no Double Jeopardy issue, the court affirmed the disgorgement order. Palmisano, 135 F.3d at 867. However, it modified the disgorgement order:

    to provide that to the extent that Palmisano

6

>           makes payment of restitution as ordered in
>           the judgment entered in the criminal case,
>           those payments shall offset his disgorgement
>           obligation in the present case.

Id., 135 F.3d at 866-67.  This offset is already built in to the Vassallo criminal case.[4]

### B. Pre-judgment Interest

>      The amount of disgorgement should include all
>      gains flowing from the illegal activities.
>      See SEC v. Lund, 570 F. Supp. 1397, 1404
>      (C.D. Cal. 1983).  The ill-gotten gains
>      include prejudgment interest to ensure that
>      the wrongdoer does not profit from the
>      illegal activity.

SEC v. Cross Financial Services, Inc., 908 F. Supp. 718, 734 (C.D. Cal. 1995) (emphasis added); SEC v. M & A West, Inc., 538 F.3d 1043, 1054 (9th Cir. 2008) (affirming district court judgment ordering disgorgement, with pre-judgment interest, "to ensure that [defendant] is not allowed to benefit from his unlawful conduct").[5]

Whether to order pre-judgment interest is within this

---

[4] Accord, SEC v. C.J.'s Fin., 2012 WL 3600239 at *9 (E.D. Mich.) (Whalen, M.J.), (approving disgorgement order, so long as defendant is given credit for amounts paid in criminal restitution), adopted 2012 WL 3597644 (E.D. Mich. 2012).

[5] In the criminal case, the district court determined that Vassallo "does not have the ability to pay interest" on the restitution, and therefore waived it. U.S. v. Vassallo, 9-cr-179, ECF No. 150 at 5.  That waiver applied to the post-judgment interest on criminal restitution, authorized by 18 U.S.C. § 3612(f).  Pre-judgment interest in certain criminal cases is also authorized by the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663A & 3664.  See U.S. v. Gordon, 393 F.3d 1044, 1057-59 (9th Cir. 2005), cert. denied, 546 U.S. 957 (2005). Neither side has addressed whether pre-judgment interest was available in the criminal case, nor whether it might be relevant to the decision here, so this court does not address it.

7

1   court's discretion, which in turn, should be guided by
2   "fundamental considerations of fairness." Osterneck v. Ernst &
3   Whinney, 489 U.S. 169, 176 (1989). Vassallo asserts that
4   ordering pre-judgment interest in this case would be unfair
5   because (1) the order for restitution already issued in the
6   criminal case, if satisfied, will make the defrauded investors
7   whole, (2) Vassallo has already been punished enough, and
8   (3) Vassallo does not have the money to pay. None of these
9   assertions convinces the court that it should refrain from
10  ordering prejudgment interest.

11      First, Vassallo offers no support for his bare assertion
12  that the restitution order would make the defrauded investors
13  whole, if he satisfied the order. Vassallo ignores the fact that
14  the purpose of pre-judgment interest in a securities fraud case
15  is to make the defrauded investors whole. "Prejudgment interest
16  reflects the victim's loss due to his inability to use the money
17  for a productive purpose, and is therefore necessary to make the
18  victim whole." Gordon, 393 F.3d at 1059 (affirming grant of
19  prejudgment interest on criminal restitution judgment for victims
20  of securities fraud).[6]

21      Second, the amount of punishment Vassallo is subject to in
22  the criminal case is not relevant to the question of prejudgment
23  interest. The disgorgement itself is not punishment. Hateley v.
24  SEC, 8 F.3d 653, 656 (9th Cir. 1993) ("the $55,000 disgorgement
25  order is not, in fact, a fine levied against the petitioners as

---

[6] Cf., Burgess v. Premier Corp., 727 F.2d 826, 838 (9th Cir. 1984) (prejudgment interest was not necessary to make victims whole, where proper showing was made).

8

punishment for their conduct. Rather it is the means by which the petitioners are required to remedy the unjust enrichment"). The prejudgment interest is levied solely against this disgorgement, and is necessary only to make the defrauded investors whole.

Third, Vassallo, who is represented by counsel, offers no explanation of any kind for why his current inability to pay prejudgment interest would render a judgment for prejudgment interest unfair. The court will not make up an explanation for him, and additionally notes that Vassallo consented to a judgment that contemplated that the SEC would later seek prejudgment interest, in addition to disgorgement and penalties.

**C.   Penalties.**

The SEC is authorized to seek, and this court is authorized to impose – "upon a proper showing" – civil penalties for the securities law violations established in this case. See 15 U.S.C. §§ 77t(d)(1) & 78u(d)(3)(A). The SEC requests the imposition of "third tier" penalties.

The court is authorized to impose "third tier" penalties if the defendant engaged in "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and the violation "resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C) & 78u(d)(3)(B)(iii); 17 C.F.R. § 201.1003 & Table III (statutory amount of $100,000 maximum per violation, adjusted for inflation to $130,000 maximum per violation; or defendant's gross pecuniary gain).[7]

---

[7] First and second tier penalties are available when there were no significant losses to investors (second tier), or fraud was

9

1    The penalty decision appears to be within this court's
2 discretion.  See SEC v. Pattison, 2011 WL 723600 at *5 (N.D.
3 Cal. 2011) ("the discretion to determine the appropriate kind of
4 penalty to impose lies with the district court"), aff'd mem., 495
5 Fed. Appx. 786 (9th Cir. 2012).  The SEC argues for the largest
6 possible penalty to reflect the seriousness of the case and the
7 large losses to investors.  Vassallo argues that there should be
8 no penalty because a Magistrate Judge in a different case held
9 that doing so would be "draconian in light of [defendant's]
10 restitution penalty of $703,474.10, property forfeiture, money
11 judgment of $1,190,470.10, and significant prison sentence."  See
12 C.J.'s Financial, 2012 WL 3600239 at *10.

13   The court has determined that a penalty is appropriate in
14 this case.  According to the allegations of the Complaint, which
15 are presumed to be true for these purposes, Vassallo lied to his
16 investors about what he would do with their money, covered up his
17 trading losses by issuing false statements, misappropriated
18 investor funds for his personal use, and ultimately caused his
19 investors to lose substantial amounts in investments.  This
20 plainly qualifies Vassallo for the "tier three" penalty level.
21 See, e.g., SEC v. CMKM Diamonds, Inc., 635 F. Supp. 2d 1885, 1192
22 (D. Nev. 2009) (finding third tier penalties are warranted).

23   Determining the amount of the penalty is not as simple.  It
24 appears from the Complaint that Vassallo did initially engage in
25 actual stock trading with investor funds.  There is no allegation

---

not involved (first tier).  15 U.S.C. §§ 77t(d)(2)
& 78u(d)(3)(B).

10

1  that the soliciting of funds and trading that Vassallo engaged in
2  from 2004 to 2007 was fraudulent, or that the statements of
3  return were fraudulent or incorrect.  While Vassallo admits that
4  he raised "over $40 million" from investors, it is not clear how
5  much of that was raised illegally, or pursuant to the "Ponzi"
6  scheme.[8]  Accordingly, the court does not know how many
7  "violations" occurred, even though Vassallo admits that he raised
8  "over $40 million" from 150 investors.
9      The court accordingly will impose the maximum penalty of
10  (1) $130,000 for one violation of Section 17(a) of the Securities
11  Act, 15 U.S.C. § 77q(a), (2) $130,000 for one violation of
12  Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and
13  Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, (3) $130,000 for
14  one violation of aiding and abetting Kenitzer's Exchange Act
15  violations, (4) $130,000 for one violation of Sections 206(1) and
16  (2) of the Investment Advisors Act, 15 U.S.C. § 80b-6(1) and (2),
17  and (5) $130,000 for one violation of Section 206(4) of the
18  Investment Advisors Act, 15 U.S.C. § 80b-6(4) and Rule 206(4)-8
19  thereunder, 17 C.F.R. § 275.206(4)-8.  These penalties total
20  $650,000.00.

### IV. CONCLUSION

22      For the reasons set forth above, the SEC's motion is hereby

---

[8] The Complaint alleges that Vassallo provided potential investors documents "purporting to show" that he had never suffered a loss and that he had a trading program returning 3.5% per month.  Complaint ¶ 12.  The Complaint does not allege that those claims were false or fraudulent from the very beginning.  Thus, Vassallo may have believed his own publicity, rather than knowingly engaging in a Ponzi scheme, at least in the beginning.

11

**GRANTED**, with the detailed judgment issuing this day in the accompanying "Final Judgment Against Anthony Vassallo."

IT IS SO ORDERED.

DATED: May 22, 2014.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT